**MARINA MERCY HOSPITAL,**
**Plaintiff–Appellant,**

v.

**Patricia HARRIS,\* Secretary of Health and Human Services,**
**Defendant–Appellee.**

**No. 78–3759.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 19, 1980.

Decided Dec. 11, 1980.

Robert A. Klein, Weissburg & Aronson, Inc., Los Angeles, Cal., argued for plaintiff–appellant; James C. Pylers, Los Angeles, Cal., on brief.

Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for defendant–appellee.

---

\* We substitute the name Patricia Harris, the successor to the original appellee, Joseph A. Califano, according to Fed.R.App.P. 43.

Before POOLE, NELSON and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

Appellant Marina Mercy Hospital (the Hospital) is a qualified "provider of services" under the Medicare program.[1] It is a limited partnership whose sole general partner is Mercy Management Corporation (MMC). MMC has two shareholders, Frances Taylor, M.D., and William Born. Taylor and Born together also own 20.46% of the limited partnership interests in the Hospital; the remaining interests are dispersed in small blocs among 54 other limited partners.

As a "provider of services", the Hospital is entitled to reimbursement for the "reasonable cost" of hospital services provided to Medicare beneficiaries. 42 U.S.C. §§ 1395f(b), 1395x(v).[2] The Hospital's claims for reimbursement are audited by Blue Cross of Southern California, which acts as a "fiscal intermediary" of the Secretary of Health and Human Services.[3] Id. § 1395h. Blue Cross disallowed reimbursement for amounts the Hospital paid MMC for management services in excess of MMC's actual cost of rendering the services, consisting of $109,424 of the $190,495 paid MMC in 1973 and $222,376 of the $249,221 paid in 1974. The disallowance was based upon Blue Cross' determination that MMC was "related to" the Hospital within the meaning of 42 C.F.R. § 405.427.[4]

As authorized by statute, the Hospital appealed to the Provider Reimbursement Review Board (PRRB). 42 U.S.C. § 1395oo(a). The PRRB affirmed the disallowance. The Hospital's administrative remedies were exhausted when the Secretary declined to exercise his discretionary power of review of the PRRB's decision. Id. § 1395oo(f)(1).[5]

The Hospital brought this action in the district court seeking judicial review of the administrative decision disallowing reimbursement for amounts the Hospital paid MMC in excess of MMC's costs. The district court affirmed the administrative decision on the ground there was substantial evidence to support the administrative finding that MMC was an organization "related to" the Hospital within the meaning of 42 C.F.R. § 405.427.[6] The Hospital appealed, invoking this court's jurisdiction under 28 U.S.C. § 1291. We affirm.

1. The Medicare program was enacted as Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395–1395rr. It provides federal funding for the medical care of the aged and disabled. Id. § 1395c.

2. The Medicare statute vests broad discretion in the Secretary of Human Services to promulgate regulations for determining what constitutes "reasonable costs." Id. § 1395x(v)(1)(A). These regulations are found in 42 C.F.R. §§ 405.401–405.488.

3. Formerly the Secretary of Health, Education, and Welfare.

4. The regulation provides in pertinent part:
"Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable of the provider *at the cost to the related organization.*"
42 C.F.R. § 405.427(a) (1979) (emphasis added).
The rationale for this regulation is set forth in sub–section (c)(2):
"Where the provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owners of the provider, in effect the items are obtained from itself. An example would be a corporation building a hospital or nursing home and then leasing it to another corporation controlled by the owner. Therefore, reimbursable cost should include the costs for these items at the cost to the supplying organization."
42 C.F.R. § 405.427(c)(2) (1979).

5. This statutory scheme is set out in more detail in *Fairfax Hospital Ass'n Inc. v. Califano,* 585 F.2d 602, 603–04 (4th Cir. 1978). *See also Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123 at 125, 127 (9th Cir. 1980); *Medical Center v. Harris,* 628 F.2d 1113 at 1115–1116 (8th Cir. 1980).

6. The applicable standard of review is whether the administrative decision is supported by substantial evidence. 42 U.S.C. § 1395oo(f)(1); 5 U.S.C. § 706(2)(E); *Memorial, Inc. v. Harris,* No. 78 3169 (9th Cir. Mar. 28, 1980).

In seeking judicial review of the administrative determination, the Hospital does not contest the validity of 42 C.F.R. § 405.427. Rather, it attacks the disallowance of management costs on the ground that the PRRB's finding that MMC is "related to" the Hospital is not supported by substantial evidence.

An organization may be "related to the provider" by either "common ownership or control." These terms are defined in 42 C.F.R. § 405.427(b):

(1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) *Control.* Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

We agree with the district court that there is substantial evidence that MMC is related to the Hospital by both common ownership and control as those terms are defined in § 405.427(b).

Given that Taylor and Born are the sole owners of MMC, the question of common ownership turns on whether Taylor and Born's 20.46% ownership of the limited partnership interests in the Hospital was significant under the circumstances. Appellant concedes that, under the applicable regulation, possession of a majority ownership interest is not required. How large a minority interest is necessary to constitute "significant ownership" cannot be rigidly defined as a fixed percentage, such as 40%, 30% or even 20%, but must be a function of all the facts of the case, including how widely dispersed the remaining interests are.[7] When, as in this case, the 20.46% bloc is viewed in light of the relatively small interests dispersed among the 54 other limited partners, we cannot, given the limited scope of judicial review, disturb the administrative finding of common ownership.

There is also substantial evidence to support the PRRB's finding that MMC and the Hospital were under the "common control" of Taylor and Born. MMC was the general partner of the Hospital. Taylor and Born, as sole owners of MMC, effectively possessed the general partner's broad powers to manage the business of the Hospital. The Partnership Agreement, which gave MMC "full charge of the management, conduct and operation of the Partnership business in all respects and in all matters," was clearly not intended to limit the general management powers vested in a general partner by California law. *See* Cal.Corp. Code §§ 15507, 15509 (West 1977 and Supp. 1980). Such broad management powers, standing alone, constitute substantial evidence of power "significantly to influence or direct the actions or policies of an organization or institution." 42 C.F.R. § 405.-427(b)(3). *Accord, Fallston General Hospital v. Harris,* 481 F.Supp. 1066, 1068–69 (D.Md.1979). In this case, the management powers vested in Taylor and Born as owners

7. This principle is stated in the Department of Health and Human Services' Health Care Financing Administration Provider Reimbursement Manual (Health Insurance Manual–15) at § 1004.2:

*Examples of Common Ownership*

The following examples illustrate the general application of the general ownership rule and are not intended to prescribe, for use in all cases, fixed percentages for determining when significant ownership or equity in an organization exists. Such a determination must be made on the basis of the facts and circumstances in each case.

\* \* \* \* \* \*

*Example No. 2*

Mr. X owns a 70% interest in the provider organization and a 40% interest in the supplying organization. The remaining 60% interest in the supplying organization is owned in equal amounts by twenty individuals unrelated to Mr. X. Unless the provider can demonstrate to the satisfaction of the intermediary that Mr. X's ownership interest in the supplying organization is not significant, the organizations are considered related to each other by common ownership.

of the Hospital's general partner are reinforced by the influence that derives from their ownership of a relatively large bloc of limited partnership interests.

The Hospital argues that Taylor and Born do not "control" the Hospital because their minority voting power in the limited partnership is insufficient, standing alone, to control the vote on the size of MMC's management fee. This argument is founded upon an unduly narrow reading of the regulation. The regulation, which speaks broadly of control as power to "influence the actions or policies of the organization," has reasonably been interpreted by the Secretary as requiring less than the voting power necessary to decide every partnership question such as the size of the management fee.

Finally, the Hospital contends that the Medicare statute entitles it to reimbursement for all reasonable costs, 42 U.S.C. § 1395f(b), and that its payments for MMC's management services were in fact reasonable even though they exceeded MMC's costs in providing the services. The Hospital "does not contend that the related organizations principle is [itself] inconsistent with the [provisions and] objectives of the Medicare Act but, rather, that its *application in this case* is in violation of the statute and regulations." Appellant's Brief at 23 (emphasis in original). This argument would have us ignore the regulation in favor of an adjudication of the reasonableness of the specific costs at issue. To do so would defeat the very purpose of the regulation.

Particularly in a program as complex and ripe with potential for abuse as Medicare, the Secretary has broad discretion to control excessive costs by adopting general prophylactic rules which, despite their inherent imprecision, eliminate the need for a cumbersome and expensive process of adjudicating item-by-item the reasonableness of costs. *See Fairfax Hospital Ass'n, Inc. v. Califano*, 585 F.2d 602, 606–07 (4th Cir. 1978). Section 405.427 is just such a prophylactic rule. *Medical Center v. Harris*, 628 F.2d 1113 at 1119 (8th Cir. 1980).

Hence, in light of the Hospital's concession that the regulation is valid, the sole question raised by its appeal is whether there is substantial evidence to support the administrative finding that MMC is "related to" the Hospital within the meaning of § 405.-427. In answering that question in the affirmative, we moot the issue whether MMC's management fees were in fact reasonable. Since it is "related to" the Hospital, any charge in excess of its actual cost is *per se* unreasonable under the regulation.

AFFIRMED.