Jack **FRIEDMAN** and Sidney Green-
wald, d/b/a Fort Tryon Nursing
Home, Plaintiffs-Appellants,

v.

Margaret M. **HECKLER**, Secretary of
the Department of Health and
Human Services, Defendant-Appellee.

No. 1253, Docket 85–6046.

United States Court of Appeals,
Second Circuit.

Argued May 23, 1985.

Decided June 24, 1985.

**384**

Marvin Neiman, New York City, for plaintiffs-appellants.

Richard M. Schwartz, Asst. U.S. Atty., for the S.D.N.Y., Rudolph W. Giuliani, U.S. Atty., for the S.D.N.Y., Jane E. Booth, Asst. U.S. Atty., Shelley Steuer, Asst. Regional Atty., Dept. of Health and Human Services, New York City, of counsel, for defendant-appellee.

Before FEINBERG, Chief Judge, and FRIENDLY and PRATT, Circuit Judges.

FEINBERG, Chief Judge:

Jack Friedman and Sidney Greenwald, doing business as Fort Tryon Nursing Home (Fort Tryon), appeal from a judgment, entered by Judge Kevin T. Duffy in the United States District Court for the Southern District of New York, dismissing their complaint. Friedman and Greenwald brought this action pursuant to 42 U.S.C. § 1395oo(f)(1) to review a final decision of the Provider Reimbursement Review Board (the Board) affirming the denial of various of Fort Tryon's claims for reimbursement under the Medicare program, 42 U.S.C. § 1395 et seq. (the Act). As a "provider of services" under the Act, Fort Tryon is entitled to reimbursement for the "reasonable cost" of providing covered services to Medicare beneficiaries. The Secretary of Health and Human Services (the Secretary) is charged with the responsibility of determining the amount of such reimbursement. *Id.* § 1395g. The Secretary often contracts with private organizations, known as fiscal intermediaries, to assist with the disbursement of Medicare funds to providers. *Id.* § 1395h.

In this case, Fort Tryon's claims for reimbursement for fiscal years 1976 and 1978 were audited by the Travelers Insurance Company (the Intermediary), a duly appointed fiscal intermediary. Dissatisfied with the Intermediary's conclusions for the years in question, Fort Tryon requested and received a hearing before the Board, *see* 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.-1835 (1984), which included live testimony. The Board affirmed the Intermediary's conclusions in relevant part. The decision of the Board became the final decision of the Secretary when the Deputy Administrator of the Health Care Financing Administration declined to reverse, affirm or modify that decision. *See* 42 U.S.C. § 1395oo(f)(1).

Fort Tryon then commenced this action, challenging the Board's disallowance of reimbursement for four items in 1976 and 1978: (1) lease and ownership costs; (2) interest expenses; (3) costs of medical supplies; and (4) physical therapy costs. The district court affirmed the Board's decision "in its entirety." On appeal, Fort Tryon challenges only those portions of the district court's decision that affirmed the Board's disallowance of reimbursement for lease and physical therapy costs. For the reasons stated below, we affirm the judgment of the district court.

I.

The relevant facts are not in dispute. Fort Tryon, a 205-bed proprietary skilled nursing facility, is a partnership comprised of Jack Friedman and Sidney Greenwald and has been operating since 1968. In 1963, Friedman and Greenwald bought a parcel of land in Manhattan under the corporate name of Sidjay Associates, Inc. (Sidjay, Inc.) for the purpose of building a nursing home. In March 1966, they conveyed 50% of their 100% ownership of Sidjay, Inc. to the Colen family, pursuant to a joint venture agreement under which the Colens agreed to obtain financing for the nursing facility and arrange for and supervise its construction. Also pursuant to this agreement, Friedman and Greenwald became two of the four directors of Sidjay, Inc. and, respectively, its treasurer and vice president.

As noted in the joint venture agreement, Friedman and Greenwald simultaneously entered into a 21-year agreement to rent

the facility from Sidjay, Inc., now 50% owned by Friedman and Greenwald. The lease, as amended in March 1967, provides for certain fixed rental payments to Sidjay, Inc. without regard to any allocation among its stockholders. The joint venture agreement, however, provides that during the years in question, the first $75,000 of the annual rental in excess of the monies needed for amortization and interest payments shall be distributed to the Colens, with the balance going to Friedman and Greenwald. Friedman and Greenwald assigned their rights as tenant to Fort Tryon in 1967. Upon completion of the nursing facility in 1968, Sidjay, Inc. (hereinafter the Lessor) was liquidated and its property distributed to the former stockholders as tenants in common, as contemplated by the joint venture agreement. Under the terms of the lease, Fort Tryon's rent was $288,480 in both 1976 and 1978, the years at issue in this suit.

The Act defines the "reasonable cost" of covered services as the "cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services." 42 U.S.C. § 1395x(v)(1)(A). The Secretary is authorized to issue regulations "establishing the method or methods to be used, and the items to be included, in determining such costs." *Id.* The regulations governing reimbursement to providers are codified at 42 C.F.R. § 405.401 et seq. (1984).

As a general rule, payments made by a provider to suppliers for interest expense, facilities and services are eligible for reimbursement at the provider's cost as long as the payments are reasonable and related to patient care. Under 42 C.F.R. § 405.427, however, if the provider and its supplier are "related" organizations, reimbursement is limited to the *supplier's* cost. Section 405.427 provides in relevant part:

(a) *Principle.* Costs applicable to services, facilities, and supplies furnished to the provider by organizations related to the provider by common ownership or control are includable in the allowable cost of the provider at the cost to the related organization. However, such cost must not exceed the price of comparable services, facilities, or supplies that could be purchased elsewhere.

(b) *Definitions—*

(1) *Related to provider.* Related to the provider means that the provider to a significant extent is associated or affiliated with or has control of or is controlled by the organization furnishing the services, facilities, or supplies.

(2) *Common Ownership.* Common ownership exists when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider.

(3) *Control.* Control exists where an individual or an organization has the power, directly or indirectly, significantly to influence or direct the actions or policies of an organization or institution.

The stated rationale for this limitation is that

[w]here the provider obtains items of services, facilities, or supplies from an organization, even though it is a separate legal entity, and the organization is owned or controlled by the owner(s) of the provider, in effect the items are obtained from itself.

42 C.F.R. § 405.427(c)(2). The regulations go on to state that "[a]n example would be a corporation building a hospital or a nursing home and then leasing it to another corporation controlled by the owner." *Id.* Section 405.427(d) permits a provider to escape the "related organization" limit on reimbursement by establishing, inter alia, that the supplier is a bona fide separate organization furnishing services, facilities or supplies to the provider that it furnishes to other, nonrelated entities, and that "the charge to the provider is in line with the charge for such services, facilities or supplies in the open market."

In addition to these regulations, the Secretary has issued the Provider Reimbursement Manual (PRM), reprinted in 1 Medicare & Medicaid Guide (CCH) ¶ 4500 et seq., which contains guidelines for deter-

mining reasonable costs. *See Home Health Services of the United States v. Schweiker,* 683 F.2d 353, 356 (11th Cir. 1982). With respect to rent paid by a provider to a related organization, the PRM, pt. 1, § 1011.5, provides:

A provider may lease a facility from a related organization within the meaning of the principles of reimbursement. In such case, the rent paid to the lessor by the provider is not allowable as cost. The provider, however, would include in its costs the costs of ownership of the facility. Generally, these would be costs such as depreciation ..., interest on the mortgage, real estate taxes, and other expenses attributable to the leased facility. The effect is to treat the facility as though it were owned by the provider.

In this case, when the Intermediary audited Fort Tryon's cost reports for fiscal years 1976 and 1978, it determined that Fort Tryon and the Lessor were related through common ownership and common control. The Board affirmed this decision on the ground of common ownership. The parties agree that the resulting disallowance for rent paid to the Colens pursuant to the joint venture agreement reduced Fort Tryon's Medicare reimbursement by approximately $12,406 in 1976 and $2,083 in 1978. The Intermediary also rejected Fort Tryon's calculation of its costs incurred in providing physical therapy services to Medicare beneficiaries. The Intermediary applied a method of apportioning costs different from that suggested by Fort Tryon. The parties agree that the use of this method resulted in a reduction in Fort Tryon's Medicare reimbursement of approximately $4,317 in 1976 and $1,682 in 1978. The Board affirmed this aspect of the Intermediary's decision as well.

## II.

To prevail, Fort Tryon must demonstrate that the decision of the Board is arbitrary, capricious, an abuse of discretion, not in accordance with law or unsupported by substantial evidence. 5 U.S.C. § 706(2); 42 U.S.C. § 1395oo(f)(1). And as this court has recognized, "[u]nless contrary to the indications of the statute itself, ... the construction and application of a statute by the agency charged with its administration is entitled to substantial deference." *Grocery Manufacturers of America, Inc. v. Gerace,* 755 F.2d 993, 1001 (2d Cir.1985).

### A. Lease Costs

In 1967, Friedman and Greenwald established 10 trusts for the benefit of their immediate family members and assigned their stock in Sidjay, Inc. to these trusts. Upon dissolution of the corporation, the trusts became tenants in common with the Colens. The parties agree that for the purposes of this case the trusts are not separate and distinct from Friedman and Greenwald, and Fort Tryon does not seek reimbursement for any rental payments to the trusts. It seeks reimbursement for that portion of the $75,000 rent paid to the Colens, pursuant to the joint venture agreement, that is allocable to providing services to Medicare beneficiaries. The Board denied such reimbursement on the ground that Fort Tryon and the lessor are related by common ownership within the meaning of section 405.427. Without question, this finding is supported by substantial evidence. Section 405.427(b)(2) states that common ownership exists "when an individual or individuals possess significant ownership or equity in the provider and the institution or organization serving the provider." Examples of "common ownership" found in the PRM make clear that "significant ownership or equity" may exist with far less than 100% ownership. *See* PRM, pt. 1, § 1004.2 (examples). Here, Friedman and Greenwald owned all the equity in Fort Tryon, the provider, and 50% of the equity in the organization serving the provider. We cannot fault the Board's conclusion that 50% constitutes "significant ownership or equity." *See id.* § 1004.2, example 3 (50% ownership in both supplier and provider sufficient to establish common ownership). Accordingly, we need not reach the Secretary's claim that Fort Tryon and the lessor are also related by common control under section 405.427(c)(3).

Appellants challenge the finding of common ownership on the ground that the Board and the district court erred by failing to apply state law. In particular, appellants claim that New York State real property law governs the rights surrounding their tenancy in common and that the Colens' interest in the lessor, which appellants argue is recognized as a separate entity under state law, also should be treated as a separate entity for purposes of federal reimbursement. This argument is without merit. Citing *United States v. Pisani*, 646 F.2d 83, 85–86 (3d Cir.1981), the Secretary properly notes that a uniform federal rule is needed since application of state law might frustrate the objectives of the Medicare program. For this reason, the regulations do not contemplate that application of the common-ownership test should rest on the quirks of the property law of various states. The Board's decision not to look to New York's law governing tenants in common was certainly neither arbitrary nor capricious.

Appellants contend that even if Fort Tryon and the Lessor are "related" under section 405.427, denial of reimbursement for Fort Tryon's lease costs was improper. Conceding that the Secretary may promulgate regulations under 42 U.S.C. § 1395x(v)(1)(A) to protect the Medicare program against unfair and overreaching claims by providers, appellants argue that application of the related organization regulation, 42 C.F.R. § 405.427, to the facts of this case contravenes the Act's general purpose of reimbursing providers for the reasonable cost of providing covered services. They suggest that the arrangement here does not involve any greater cost to the program than if the joint venture agreement had been structured so that the Colens ended up with 100% ownership of the land and building housing the nursing home and leased it to Friedman and Greenwald for $75,000 a year plus mortgage and tax payments. Moreover, the argument runs, Fort Tryon and the Colens do operate at arm's length—there is no threat of provider overreaching.

The Secretary argues that section 405.-427 is " 'reasonably related to the purposes of the relevant enabling legislation,' " *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1973) (quoting *Thorpe v. Housing Authority*, 393 U.S. 268, 280–81, 89 S.Ct. 518, 525, 21 L.Ed.2d 474 (1969)), and is therefore a proper exercise of the Secretary's rulemaking authority under 42 U.S.C. § 1395x(v)(1)(A). As the Ninth Circuit noted in *Marina Mercy Hospital v. Harris*, 633 F.2d 1301, 1304 (9th Cir.1980) (citations omitted):

Particularly in a program as complex and ripe with potential for abuse as Medicare, the Secretary has broad discretion to control excessive costs by adopting general prophylactic rules which, despite their inherent imprecision, eliminate the need for a cumbersome and expensive process of adjudicating item-by-item the reasonableness of costs.... Section 405.427 is just such a prophylactic rule.

*See also Medical Center v. Harris*, 628 F.2d 1113, 1119–20 (8th Cir.1980); *Fairfax Hospital Association, Inc. v. Califano*, 585 F.2d 602, 606 (4th Cir.1978). The regulations serve to bar arrangements under which, for example, a lessor might kick back a certain amount of the rent to the provider-lessee, thereby resulting in over-reimbursement by Medicare to the provider. As stated in the PRM, pt. 1, § 1000, the purpose of the regulations is two-fold: "(1) to avoid the payment of a profit factor to the provider through the related organization ..., and (2) to avoid payment of artificially inflated costs which may be generated from less than arm's-length bargaining."

The criteria defining "related entity" under section 405.427 are sufficiently precise to insure in general that entities found to be "related" under the regulation are reasonably presumed to be dealing with each other at less than arm's-length. In addition, many providers may rebut that presumption by demonstrating that the transactions in question meet the conditions of subsection (d), 42 C.F.R. § 405.427(d). *See Regents v. Heckler*, 756 F.2d 1387, 1397–98

(9th Cir.1985); *American Hospital Management Corp. v. Harris,* 638 F.2d 1208, 1213 (9th Cir.1981).

■■■ Prophylactic rules such as section 405.427 cannot, and need not, operate with mathematical precision. *Marina Mercy Hospital, supra,* 633 F.2d at 1304; *Fairfax Hospital, supra,* 585 F.2d at 606. While, as appellants point out, PRM, pt. 1, § 1004.1 states that the determination of common ownership shall be made on a case by case basis, we believe this was intended only to require that the relationship between provider and supplier be examined and not, as appellants would have it, also to require scrutiny of the relationship among the owners of each of these entities. The Board thus did not act arbitrarily when it refused to consider the effect of the joint venture agreement. Failure so to scrutinize the relationship among the owners of a provider or a supplier in each transaction covered under section 405.427 indeed may occasionally lead to unfair results. On the other hand, requiring such examinations in every case would undoubtedly be burdensome. The mere fact that a regulation operates overbroadly does not render it invalid. *Mourning, supra,* 411 U.S. at 373–74, 93 S.Ct. at 1662–63. As the Supreme Court noted in *Knebel v. Hein,* 429 U.S. 288, 294, 97 S.Ct. 549, 553, 50 L.Ed.2d 485 (1977), neither the possibility of unfairness in a particular case nor the availability of alternatives to the adopted regulation renders the Secretary's choice invalid. Section 405.427 was authorized by, and reasonably related to the purposes of, 42 U.S.C. § 1395x(v)(1)(A) in particular and the Act in general. Accordingly, there is no basis for setting aside the decision of the Board disallowing lease costs.

### B. *Physical Therapy Costs*

■■■ Appellant's claim concerning reimbursement for physical therapy costs may be disposed of with less discussion, despite the fact that neither party's brief proved illuminating on this point. The Intermediary, in the absence of evidence of a detailed charge structure, reconstructed Medicare and total physical therapy charges for all patients by applying Fort Tryon's standard physical charge of $7.50 per visit to log data supplied by Fort Tryon indicating the number of physical therapy visits for Medicare and non-Medicare patients. This method is described as "grossing up." *See* PRM, pt. 1, § 2314B; *St. Mary's Hospital Medical Center v. Heckler,* 753 F.2d 1362, 1366–67 (7th Cir.1985). Judge Duffy concluded that in light of Fort Tryon's failure to maintain the records required for reimbursement under PRM, pt. 1, § 2203, use of the "grossing up" method in this case was reasonable. We agree. The Secretary has broad discretion in formulating methods for calculating reasonable costs. *St. Mary's, supra,* 753 F.2d at 1367.

■■■ Appellants contend that their physical therapy costs should have been calculated according to Method E, which is set out in PRM, pt. 1, § 2208.3E. But Method E is designed for use by a skilled nursing facility that has "an all-inclusive rate or no-charge structure;" it may not be used by a facility that has "a charge structure for individual services rendered." *Id.* § 2208.-2. Appellants' claim that Method E is not so limited is without merit. They point only to the statement in section 2208.3 that Method E, among others, had "not been specifically directed towards the all-inclusive rate and no-charge structure hospital-skilled nursing facility *complex." Id.* § 2208.3 (emphasis added). This statement has no bearing since Fort Tryon is not such a complex. The Board found that Fort Tryon "is not an all-inclusive rate provider," and that it "has a charge structure;" appellants have not come forward with anything to challenge these findings. Consequently, we cannot fault the Secretary's conclusion that Fort Tryon was not entitled to use of Method E.

The judgment of the district court is affirmed.