788 F.2d 888
 13 Soc.Sec.Rep.Ser. 275, Medicare&Medicaid Gu 35,357
ST. MARY'S HOSPITAL OF TROY, Plaintiff-Appellant,
v.
BLUE CROSS AND BLUE SHIELD ASSOCIATION/BLUE CROSS AND BLUE
SHIELD OF GREATER NEW YORK, Fiscal Intermediary, and the
Secretary of the Department of Health and Human Services,
and Paul Morton Ganeles, Chairman, Richard A. Dudgean, and
Barbara Sinnott as Members of the Provider Reimbursement
Review Board, and the Provider Reimbursement Review Board,
Defendants-Appellees.
 No. 189, Docket 85-6049.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 28, 1985.
Decided April 16, 1986.
 
 Michael J. Smith, Troy, N.Y. (Thomas V. Kenney, Jr., Troy, N.Y., of counsel), for plaintiff-appellant.
 Elizabeth Dusaniwskyj, Asst. Regional Atty., Region II, Dept. of Health and Human Services (Frederick J. Scullin, Jr., U.S. Atty., N.D.N.Y., Terry Coleman, Acting General Counsel, Region II, Dept. of Health and Human Services, of counsel), for defendants-appellees.
 Before MESKILL, CARDAMONE and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 St. Mary's Hospital of Troy appeals from a grant of summary judgment by Judge Miner disallowing federal reimbursement under the Medicare program of approximately $30,600 for interest on loans made by the Hospital's funded depreciation account to its general operating account. We affirm.
 
 
 2
 The account in question was funded by monthly deposits and was supposed to provide funds to replace worn out or obsolete facilities in the future. During 1977 and 1978, the Hospital borrowed money from this account to pay certain operating expenses and sought reimbursement for the interest from the federal Medicare program.
 
 
 3
 Blue Cross and Blue Shield Association ("Blue Cross"), the fiscal intermediary that audited the Hospital's 1979 and 1980 cost reports, disallowed the reimbursement pursuant to provisions of the Medicare Provider Reimbursement Manual ("Manual"). Section 226.3 of the Manual, Part 1, reprinted in Medicare and Medicaid Guide (CCH) p 5145, requires that deposits to funded depreciation accounts remain in those accounts for six months before reimbursable interest-bearing loans may be made to other hospital accounts. Section 226.4 of the Manual, Part 1, reprinted in Medicare and Medicaid Guide (CCH) p 5152, requires last-in, first-out ("LIFO") accounting for withdrawals from funded depreciation accounts that are used to pay operating expenses. Applying these sections of the Manual, Blue Cross disallowed interest expenses paid by the Hospital's general fund to the funded depreciation account with respect to the 1977 and 1978 loans. This disallowance resulted from the fact that St. Mary's had made deposits to the depreciation account within six months of each of the loans.
 
 
 4
 The Hospital, or "provider" in the lexicon of Medicare, appealed Blue Cross' decision to the Provider Reimbursement Review Board ("PRRB"), which also rejected the claim. After the Administrator of the Health Care Financing Administration declined to exercise discretionary power to review the PRRB's decision, the Hospital then sought judicial review. It brought the present action pursuant to 42 U.S.C. Sec. 1395oo(f), a provision relating to the PRRB that incorporates 5 U.S.C. Sec. 701 et seq., the Administrative Procedure Act. On December 7, 1984, Judge Miner granted defendants' motion for summary judgment. We affirm.
 
 DISCUSSION
 
 5
 Manual Sections 226.3 and 226.4 must be viewed in the context of the formal regulations promulgated pursuant to Medicare legislation for the reimbursement of interest paid by providers on borrowed money. The regulations provide that necessary and proper interest on both current and capital indebtedness is a reimbursable cost. 42 C.F.R. Sec. 405.419(a)(1). However, interest on loans from organizations that are related through control, ownership, or personal relationship to the borrowing provider is not reimbursable. 42 C.F.R. Sec. 405.419(c). Otherwise, a provider might generate interest charges simply by shifting funds between internal working accounts. Nevertheless, interest on loans from a provider's funded depreciation account to the provider is reimbursable, 42 C.F.R. Sec. 405.419(b)(3)(ii), (c)(2), because of a policy favoring the maintenance of such accounts. The Manual is essentially an interpretive guide to these regulations, and Sections 226.3 and 226.4 condition reimbursement of interest on loans from a provider's funded depreciation account to another internal account on the six-month and LIFO requirements. The Manual sections are thus conditions on an exception to an exception to a general rule.
 
 
 6
 Our jurisdiction is based on 42 U.S.C. Sec. 1395oo(f)(1). This appeal is governed by the standards of the Administrative Procedure Act, which provides that a party seeking to upset agency action must demonstrate that the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. Sec. 706(2)(A). Deference must of course be accorded agency interpretations of the statute it is authorized to administer, and we have noted with regard to Medicare administration:
 
 
 7
 Particularly in a program as complex and ripe with potential for abuse as Medicare, the Secretary has broad discretion to control excessive costs by adopting general prophylactic rules which, despite their inherent imprecision, eliminate the need for a cumbersome and expensive process of adjudicating item-by-item the reasonableness of costs.
 
 
 8
 Friedman v. Heckler, 765 F.2d 383, 387 (2d Cir.1985) (quoting Marina Mercy Hospital v. Harris, 633 F.2d 1301, 1304 (9th Cir.1980)). We recognize that we deal here, not with either a statute or with formally promulgated regulations, but with a Manual explicating those regulations. While such interpretive guides are without the force of law, they are entitled to be given weight. See Sun Towers, Inc. v. Heckler, 725 F.2d 315, 325 n. 16 (5th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).
 
 
 9
 It is clear that the interest in question was properly disallowed if the Manual sections are valid. The Hospital claims, however, that the Manual sections are inconsistent with a regulation that explicitly allows for reimbursement of interest expenses on loans from a provider's funded depreciation account. 42 C.F.R. Sec. 405.419(b)(3)(ii), (c)(2). We disagree.
 
 
 10
 The six-month and LIFO rules prevent program abuse and further the purposes of the regulations in question. See Friedman, supra. Unrestricted use of funded depreciation accounts to meet operating expenses through loans might easily defeat the very purpose of encouraging the funding of such accounts, which is to ensure that funds will be available to replace hospital facilities as they become worn out or obsolete. In the absence of Manual Sections 226.3 and 226.4, providers might deposit funds in the funded depreciation account and immediately loan them to the general or operating fund, thereby increasing reimbursable interest costs while effectively eliminating funding for depreciation. This result would conflict both with the purpose of 42 C.F.R. Sec. 405.419(c), to prevent the creation of interest charges based solely on intra-provider book transfers, and with the purpose of 42 C.F.R. Sec. 405.419(b)(3)(ii), (c)(2), to encourage the funding of depreciation. The PRRB explained the six-month rule in 1975, stating that "the rule is designed to prevent creation of 'phantom accumulated depreciation in the funded depreciation accounts which consists primarily of receivables.' " PRRB Hearing Dec. No. 75-D4 (July 31, 1975), reprinted in Medicare & Medicaid Guide (CCH) p 27,466. We thus find a reasonable basis in the regulations themselves for the six-month and LIFO rules.
 
 
 11
 The Hospital next argues that application of the Manual provisions is arbitrary in light of New York State rules applicable to the Hospital that require depreciation to be funded. It contends that the Manual provisions were designed only for circumstances in which funding of depreciation is permissive and that the kind of abuse described above cannot occur in New York. Again we disagree. While the state's regulations do require depreciation to be funded, they permit borrowing from the depreciation account without restrictions guarding against use of that account solely as a conduit for the payment of operating expenses in order to create reimbursable interest. See 10 N.Y.C.R.R. Sec. 86-1.23(b). The prophylactic purpose of the federal rules therefore is not fulfilled by the state rules.
 
 
 12
 The Hospital also argues that it would have been reimbursed for interest expenses had it borrowed the funds from a bank and that the interest on a bank loan would have been higher. It is true that interest paid on a bank loan would be reimbursable if such a loan met applicable Medicare requirements. However, the government also must reimburse interest charges at bank rates when a provider has insufficient cash on hand to replace its depreciable assets, one concern that underlies the regulations that encourage the funding of depreciation accounts. Cheshire Hospital v. New Hampshire-Vermont Hospitalization Service, Inc., 689 F.2d 1112, 1125 (1st Cir.1982). We cannot say that the Secretary's choice of encouraging the funding of depreciation accounts even at the cost of causing providers to borrow money for operating expenses is invalid. See Knebel v. Hein, 429 U.S. 288, 294, 97 S.Ct. 549, 553, 50 L.Ed.2d 485 (1977) ("the availability of alternatives does not render the Secretary's choice invalid").
 
 
 13
 Finally, the Hospital argues that the Manual sections are rules that must conform with the notice and comment requirements of 5 U.S.C. Sec. 553. That is incorrect. First, Manual rules have consistently been held to be "interpretive rules," and thus exempt from the notice and comment requirements. 5 U.S.C. Sec. 553(b)(A); Columbus Community Hospital v. Califano, 614 F.2d 181, 187 (8th Cir.1980). Second, the Manual provisions at issue were adopted in 1968. Medicare regulations became subject to the Administrative Procedure Act only in 1971, and the Act does not apply to actions taken by the agency pursuant to those regulations before that time. Bedford County General Hospital v. Heckler, 757 F.2d 87, 90 (6th Cir.1985); Humana of South Carolina, Inc. v. Califano, 590 F.2d 1070, 1084 (D.C.Cir.1978). We therefore affirm.