**Mary Jean SHINER**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services.**

**Civ. A. No. 88–324.**

United States District Court, D. Vermont.

April 16, 1991.

John P. Riley, McKee, Giuliani & Cleveland, Montpelier, Vt., for plaintiff.

Christopher B. Baril, Asst. U.S. Atty., Rutland, Vt., for defendant.

1. Although Shiner's filing date may have been retroactively protected back to June 1975, the difference in the filing date appears not to affect her benefits. R. at 66.

2. Prior to that time Shiner had been receiving benefits based upon her husband's entitlement. R. at 37.

3. The Administrative Record is somewhat inconsistent as to whether Shiner's entitlement to benefits ceased in February, or April, or May, 1982. R. at 37–38, 70, 72, 76, 108. Apparently, she began performing substantial work in February 1982 and her cash benefits continued

## OPINION AND ORDER

COFFRIN, District Judge.

Louis W. Sullivan, M.D., the Secretary of Health and Human Services, ("Secretary"), has objected to the Magistrate's Report and Recommendation ("Report"), in this matter. *See Shiner v. Sullivan,* Civ. No. 88–324, slip op. (D.Vt. July 27, 1990) (Niedermeier, Mag.). The Magistrate recommended reversal of the Secretary's decision regarding the computation of Social Security disability benefits for claimant Mary Jean Shiner. The Magistrate also recommended a remand of the case, in order for the Secretary to recompute Shiner's benefits. We decline to adopt the Magistrate's recommendations. Instead we affirm the Secretary's decision, although on somewhat different reasoning than that expressed by the Secretary.

## BACKGROUND

Shiner has been blind since about the time of her birth, May 11, 1953. Administrative Record ("R.") at 23. She initially filed an application for Social Security disability insurance benefits in May 1976. R. at 9.[1] She became entitled to disability insurance benefits in May 1977. R. at 37.[2] Her entitlement to benefits ceased in early 1982[3] when her earnings reached the level of substantial gainful activity.[4] In April 1984, because she was in the advanced stages of pregnancy, Shiner stopped working and filed her current application for disability benefits. R. at 49–52, 62. Since March 1984 was the final month in which her earnings met the statutory amount for

through the last day of April 1982, three months later. R. at 67, 70, 95; *see* 42 U.S.C. § 423(e). In any case, this inconsistency does not affect our decision. We will simply refer to Shiner's entitlement to benefits as having ended in "early 1982."

4. Substantial gainful activity for a blind individual under age fifty-five is determined strictly according to earnings. A blind individual whose average monthly earnings exceed the regulatory maximum will be considered to be engaging in substantial gainful activity. 42 U.S.C. § 423(d)(4); 20 C.F.R. § 404.1584(d).

substantial gainful activity, the Secretary determined that Shiner became re-entitled to disability benefits effective April 1984. R. at 63, 68, 74.

In October 1984, the Secretary notified Shiner that because she was not entitled to benefits from May 1982 through March 1984, she had been overpaid $5334.90, and that special benefits for her baby daughter Esther had been overpaid by $45.00. R. at 76, 79. Shiner had continued to receive benefits during the May 1982 to March 1984 ineligibility period, due to an error by the Social Security Administration. R. at 65, 76. The Secretary subsequently reduced the amount of overpaid benefits to $2567.60, by deducting the amount of benefits owed to Shiner because of other errors made by the Administration. R. at 80, 82, 87. Eventually, the Secretary granted her request for a waiver of recovery of this overpayment. R. at 90.

On September 6, 1987, Shiner was notified that monthly benefits for her daughter Esther had been overpaid by $345.00 during 1984-87. R. at 100, 102. Shiner received a second letter on September 6, 1987, notifying her that, due to an error by the Administration, her own monthly benefits had been incorrectly computed since April 1984, and that she had consequently been overpaid by $5106.00. R. at 104.[5] Shiner requested a waiver of recovery of the two overpayments. R. at 109. She also requested a hearing to contest the accuracy of the September 1987 computation of her monthly benefit amount, alleging that this computation would result in a reduction to her current and future benefits. R. at 108-09.

A hearing was held before Administrative Law Judge ("ALJ") Robert L. Hermann on October 29, 1987. R. at 9. In his opinion issued March 31, 1988, the ALJ waived recovery of the overpayment to both Shiner and her daughter Esther. R. at 13. However, the ALJ found that the September 1987 computation of Shiner's monthly benefit amount was correct. *Id.* The ALJ's opinion became the final decision of the Secretary when the Appeals Council refused on October 17, 1988, to grant her request for review. R. at 3-4.

Shiner subsequently sought review in this court as to the correctness of the September 1987 computation of her monthly benefits. 42 U.S.C. §§ 405(g), 421(d). The Magistrate's Report recommended reversal of the Secretary and remand of the case for the recomputation of benefits. The Secretary objected to the Report in a timely manner. The issue now before this court is whether or not to affirm the Secretary's decision that the September 1987 computation was correct.

## DISCUSSION

### I. *Standard of Review*

▉ We must proceed with a *de novo* determination of the portions of the Magistrate's Report to which objection has been made. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). However, the standard for judicial review of the Secretary's final decision is not *de novo*, but is limited to an assessment of the Secretary's general treatment of the administrative record. *Wagner v. Secretary of Health and Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990).

▉ The Secretary's decision must be affirmed if we find that the Secretary applied correct legal principles and based his decision upon substantial evidence. 42 U.S.C. § 405(g); *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). The Supreme Court has defined "substantial evidence" as " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

---

**5.** This letter from the Administration stated "[t]he $2567.60 previously waived has reduced your overpaymet [sic] to the above amount" [$5106.00]. R. at 104. In other words, the

actual overpayment of benefits from April 1984 onward apparently totalled $7673.60. R. at 88, 104.

Furthermore, where a ruling by the Secretary is in dispute, we must accord "considerable weight" to the Secretary's construction of a statutory scheme he is entrusted to administer. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Congress expressly granted power to the Secretary to formulate regulations and procedures necessary to carry out the provisions of the Social Security Act. 42 U.S.C. § 405(a). In light of this gap-filling provision, regulations adopted by the Secretary must be given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44, 104 S.Ct. at 2781–83 (citations omitted).

However, we also recognize that this case involves procedures set forth in the Social Security Administration's Programs Operations Manual System ("POMS"). The POMS manual does not merit the same type of judicial deference as do the regulations adopted by the Secretary in compliance with the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706. The POMS manual is simply an "interpretive guide" to those formally promulgated regulations, and thus does not have the force of law. *St. Mary's Hosp. of Troy v. Blue Cross & Blue Shield Ass'n*, 788 F.2d 888, 890 (2d Cir.1986). Nevertheless, the statutory and regulatory interpretations which it contains are entitled to be given some weight. *Id.*

## II. *Shiner's Claim*

Shiner's basic argument is that the Secretary incorrectly computed her monthly disability benefit amount for the period after her April 1984 re-entitlement. R. at

---

**6.** See section II.B.2. below for a detailed description of a "period of disability," also known as a "disability freeze."

**7.** Because Shiner first became insured for purposes of Social Security disability benefits on January 1, 1974, that is the date which marks the beginning of her initial "period of disability." R. at 11, 27, 35, 95; 42 U.S.C. § 416(i)(2); 20 C.F.R. § 404.320.

**8.** 42 U.S.C. § 423(a)(1) states in pertinent part:

---

108–09. The Secretary deemed Shiner to be the age of 62 when she became reentitled to benefits in April 1984, and found that her benefits could not be computed according to the "DIB Freeze Recomputation Method." R. at 3; POMS, RS 00605.-532. Shiner, however, argues that the Secretary should have assumed her to be over the age of 65 in April 1984, thus making her eligible for higher benefits based on the DIB Freeze Recomputation Method. R. at 109; POMS, RS 00605.532.

After extensive examination of the applicable statutes, regulations, and POMS provisions, we find that the Secretary was correct in finding Shiner to be ineligible for the DIB Freeze Recomputation Method. However, we disagree with some of the reasoning underlying the Secretary's decision. In this analysis, we will endeavor to outline, as concisely as possible, our view of the relevant aspects of the intricate and complex process of disability insurance benefits computation.

### A. *Shiner's Entitlement to Disability Insurance Benefits*

A step-by-step analysis of the applicable statutes and regulations is necessary in order for us to determine whether the Secretary's decision was based on correct legal principles. First, Shiner's vision impairment satisfies the statutory definition of blindness. R. at 11; 42 U.S.C. § 416(i)(1); 20 C.F.R. § 404.1581. Because of her blindness, she qualified for a "period of disability"[6] beginning January 1, 1974.[7]

In order to be entitled to payment of disability insurance benefits, Shiner must satisfy the four basic elements of 42 U.S.C. § 423(a)(1).[8] First, Shiner was insured from January 1, 1974, onward. R. at 11, 27, 35, 95; 42 U.S.C. § 423(c)(1). Second,

---

Every individual who—
    (A) is insured for disability benefits ...,
    (B) has not attained the retirement age ...,
    (C) has filed application for disability insurance benefits, and
    (D) is under a disability (as defined in subsection (d) of this section)
shall be entitled to a disability insurance benefit....

since she was born May 11, 1953, she satisfies the requirement of not having attained the retirement age. R. at 23; 42 U.S.C. § 416(*l*). Third, she filed her application for disability insurance benefits initially in May 1976, and again in April 1984. R. at 9, 49–52. Thus Shiner satisfied the first three elements of the benefit entitlement statute.

■ The fourth element of this statute specifically requires Shiner to satisfy the section 423(d) definition of disability. 42 U.S.C. § 423(a)(1)(D). Throughout the entire period since January 1, 1974, Shiner's blindness has satisfied the definition of "disability" found in 42 U.S.C. § 416(i)(1).[9] However, she failed to meet the more stringent section 423(d) definition of "disability" during the period from early 1982 through March 1984, because she was engaged in substantial gainful activity. R. at 67–68; 42 U.S.C. § 423(d)(1)[10]; 20 C.F.R. 404.-1584(b). In other words, Shiner only satisfied the fourth element of the entitlement statute prior to, and following, that period which lasted from early 1982 through March 1984. Consequently, Shiner satisfied all four elements of 42 U.S.C. § 423(a)(1), and was thus entitled to benefits, up until early 1982, and beginning again in April 1984. R. at 67–68.

■ The specific timing of Shiner's disability benefit payments is regulated by other language within this same statute:

**9.** 42 U.S.C. § 416(i)(1) states in pertinent part: Except for purposes of [section 423], the term "disability" means (A) ..., or (B) blindness; and the term "blindness" means central visual acuity of 20/200 or less in the better eye with the use of a correcting lens.

**10.** 42 U.S.C. § 423(d)(1) states in pertinent part: The term "disability" means—
(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical ... impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months; or
(B) in the case of an individual who has attained the age of 55 and is blind ..., inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which [s]he has previously engaged with some regularity and over a substantial period of time.

[A qualifying individual] shall be entitled to a disability insurance benefit

(i) for each month beginning with the first month after [her] waiting period [11] ... in which [s]he becomes so entitled to such insurance benefits, or

(ii) for each month beginning with the first month during all of which [s]he is *under a disability and in which [s]he becomes so entitled to such insurance benefits, but only if [s]he was entitled to disability insurance benefits which terminated* ... within the 60–month period preceding the first month in which [s]he is under such disability....

42 U.S.C. § 423(a)(1) (emphasis added). Shiner was initially entitled to disability benefits which terminated in early 1982. The first month during which she was again under a disability, according to the section 423(d) definition, was April 1984, less than sixty months after her prior benefits terminated. Thus, her entitlement to benefits as of April 1984 is governed by 42 U.S.C. § 423(a)(1)(ii).

The amount of Shiner's monthly benefits is determined by the following subsection:

[An] individual's disability insurance benefit for any month shall be equal to his primary insurance amount for such month determined ... *as though he had attained age 62 in—*

Shiner met the requirements of subparagraph (A) of this section, except during that 1982 through March 1984 period. Thus, except for that time period, she satisfied this section 423(d) definition of disability.

**11.** Apparently no additional waiting period is required when an individual becomes re-entitled to benefits after a period of termination. *See* 42 U.S.C. §§ 423(a)(1)(ii), 423(a)(2)(B). However, we disagree with the Magistrate's finding that no waiting period was ever required for Shiner because of her blindness. Report at 14, *citing* 42 U.S.C. § 423(c)(1)(B). The special exception in 42 U.S.C. § 423(c)(1)(B) for blind individuals specifically applies to the definition of insured status, not to the definition of waiting period. *Id.* Thus Shiner had a five month waiting period which ended in June 1974. R. at 37; 42 U.S.C. § 423(c)(2).

(A) the first month of his waiting period, or

(B) in any case in which clause (ii) of paragraph (1) of this subsection is applicable, *the first month for which he becomes entitled to such disability insurance benefits ....*

42 U.S.C. § 423(a)(2) (emphasis added). Therefore, since section 423(a)(1)(ii) is applicable in this case, Shiner's monthly benefits, as of April 1984, are to be computed according to 42 U.S.C. § 423(a)(2)(B). In other words, the statute specifically provides that her monthly benefit is to be determined as though Shiner attained the age of sixty-two in April 1984. *Id.*

The Secretary's final (September 1987) computation of Shiner's monthly benefits was based, in part, on a similar interpretation of 42 U.S.C. § 423(a); hence, the Secretary considered Shiner to be sixty-two in April 1984. R. at 3, 11–12. The Magistrate recommended that we reverse the Secretary's decision, based primarily upon the Magistrate's conclusion that 42 U.S.C. § 423(a)(2) is "not applicable to the present case because the claimant is blind." Report at 15. However, in our opinion the Magistrate was incorrect in his finding as to the inapplicability of section 423(a)(2) to this case. We find that the Secretary's reading 42 U.S.C. § 423(a)(2) was a "reasonable interpretation," and therefore must be upheld. *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782, *cited with approval in Ransom v. Bowen,* 844 F.2d 1326, 1334 (7th Cir.1988), *cert. denied,* 488 U.S. 969, 109 S.Ct. 499, 102 L.Ed.2d 535 (1988).

### B.  Methods of Computation

We have concluded that the Secretary's decision was correct to the extent of treating her as if she had attained the age of sixty-two in April 1984. 42 U.S.C. § 423(a)(2)(B). The next step in our analysis is to examine the computation methods employed by the Secretary in this case in order to determine whether the Secretary's final decision is supported by substantial evidence. *Johnson,* 817 F.2d at 985.

### 1.  Average–Indexed–Monthly–Earnings Method

An individual's monthly disability insurance benefit payment is based on a figure known as the primary insurance amount ("PIA"). 42 U.S.C. § 423(a)(2); 20 C.F.R. § 404.201. There are two major methods for computing an individual's PIA. 20 C.F.R. § 404.204(a). One is the average-monthly-wage method ("AMW"), which applies to claimants who became disabled before 1979. 20 C.F.R. § 404.204(b)(2). The other is the average-indexed-monthly-earnings ("AIME") method, which applies to individuals who became disabled [12] after 1978. 42 U.S.C. § 415(b); 20 C.F.R. § 404.204(b)(1).

Three major steps are involved in computing a claimant's primary insurance amount under the AIME method. 20 C.F.R. § 404.210(b). First, the Secretary finds a claimant's "average indexed monthly earnings." 20 C.F.R. §§ 404.210(b)(1), 404.211. Second, the Secretary finds the "benefit formula" in effect for the year in which the claimant becomes disabled. 20 C.F.R. §§ 404.210(b)(2), 404.212. Then the Secretary applies that benefit formula to the claimant's average indexed monthly earnings to find the claimant's primary insurance amount. 20 C.F.R. §§ 404.210(b)(3), 404.212.

Although Shiner initially became disabled before 1979, her April 1984 reentitlement to benefits made her eligible for the AIME computation method. 20 C.F.R. § 404.252(a); Report at 6. Apparently the Secretary did employ this applicable method in his final (September 1987) computation of Shiner's benefits. Report at 7, *citing* R. at 3–4; *see also* Memorandum of Law in Support of Defendant's Motion for an Order Affirming the Secretary at 7.

### 2.  Period of Disability

In determining a claimant's primary insurance amount according to a method

---

**12.** Apparently the 42 U.S.C. § 423(d) definition applies to the term "disability" as it is used in 20 C.F.R. § 404.204(b). *See* 20 C.F.R. § 404.252(a); *see also* section II. A. above.

such as AIME,[13] the Secretary takes into account an additional factor. 20 C.F.R. § 404.320; *see* POMS, RS 00605.210. This factor is referred to by various synonyms: "period of disability,"[14] "disability freeze," "freeze period," or simply "freeze." The freeze can be used to exclude earnings of certain years from the computation of the claimant's average monthly earnings. 20 C.F.R. § 404.320; *Ransom*, 844 F.2d at 1331 (citations omitted); POMS, RS 00605.-210(A).

▆▆▆▆ The purpose of a freeze is to protect the worker against the loss of, or a reduction in the amount of, her disability benefits. *Ransom*, 844 F.2d at 1331 (citations omitted). Essentially, this purpose is accomplished by providing that part of the period during which she is disabled, and therefore unlikely to have substantial earnings, will not be counted against her in determining her insured status or benefit amount. *Id.;* 20 C.F.R. § 404.320; POMS, RS 00605.210(A). Moreover, the freeze is designed only to help claimants, and where a freeze computation results in a lower monthly benefit amount, this computation method will not be used. 42 U.S.C. § 420.

▆▆▆▆ "Period of disability" is specifically defined in 42 U.S.C. § 416(i)(2). This section carefully delineates when a "period of disability" shall begin, and when it shall end. 42 U.S.C. § 416(i)(2)(C), (D). For an individual who meets the requirement of insured status and meets, or is exempted from, the requirement of minimum quarters of coverage, "[a] period of disability shall begin ... on the day the disability began." 42 U.S.C. § 416(i)(2)(C)(i); *see* 42 U.S.C. § 416(i)(3). Shiner's disability, according to the applicable section 416(i)(1) definition, began at the time of her birth.

R. at 23. However, she did not meet the requirement of insured status until much later, and thus her initial "period of disability" began on January 1, 1974. R. at 27; 42 U.S.C. § 416(i)(2)(C)(ii).

▆▆▆▆ A much more problematic issue than the beginning of Shiner's initial "period of disability," involves the determination of when it ended. Unfortunately, Congress's choice of the words "period of disability" has contributed to a great deal of misapprehension regarding the actual definition of the term. Consequently, the Social Security Administration and courts have used this single term to communicate very different concepts.

The first manner in which the term has been used is to convey the definition specifically labeled by Congress as a "period of disability" in 42 U.S.C. § 416(i)(2). According to this definition, any individual's "period of disability" would not last indefinitely, but instead would end according to the rules set out in the statute. For example, it could end when the individual reached retirement age, or when the individual's disability insurance benefits terminated. 42 U.S.C. § 416(i)(2)(D).[15]

The second manner in which "period of disability" has been used is to denote the *entire* time an individual is "disabled," under the § 416(i)(1) definition. For example, the *Ransom* court described the concept as protecting the worker "by providing that *the period during which [s]he is disabled* ... will not be counted" against the worker. *Ransom*, 844 F.2d at 1331 (citations omitted) (emphasis added). Similarly, the Social Security Administration has stated that a "period of disability" for a blind individual does not end so long as the individual continues to be statutorily blind.

---

**13.** Use of the period of disability is not limited to the AIME method. It may be used in practically all computation methods available to a claimant for determining the primary insurance amount. POMS, RS 00605.220.

**14.** This is the same "period of disability" mentioned in note 7, above. *See* 42 U.S.C. § 416(i)(2).

**15.** The statute provides in pertinent part:

A period of disability *shall end* with the close of whichever of the following months is the earlier:
   (i) the month preceding the month in which the individual attains retirement age ..., or
   (ii) the month preceding
   (I) the termination month ..., or, if earlier
   (II) the first month for which no benefit is payable....
42 U.S.C. § 416(i)(2)(D) (emphasis added).

*See* 20 C.F.R. § 404.1586(b); R. at 93, 97–98. In Shiner's case, this would mean that her period of disability which began January 1, 1974, would last throughout the entire duration of her blindness, presumably until her death.[16] *See* R. at 12. Yet the Administration has failed to be consistent in its use of the term. Contrary to the idea that her "period of disability" continued throughout the course of her blindness, the Administration also stated that she was entitled to a new period of disability in May 1982, and/or in April 1984. R. at 11, 74. Moreover, at one point in the Record, the Secretary referred to a "fictitious period of disability," but it is unclear how this differs from a non-fictitious period of disability. R. at 3.

To further confuse the issue, "period of disability" and "freeze period" are not always used consistently. As mentioned above, these terms are generally considered to be synonyms. *Ransom*, 844 F.2d at 1331; Secretary's Memorandum in Support of His Objection to the Magistrate's Report and Recommendation ("Objection Memo") at 3, 5. The Secretary appears to favor the term "period of disability" for use in the Code of Federal Regulations. *See, e.g.*, 20 C.F.R. § 404.320(a). "Freeze" or "freeze period" are more common in the POMS manual. *See, e.g.*, POMS, RS 00605.220. However, the POMS manual incorporates all three terms in certain sections, apparently synonymously. *See, e.g.*, POMS, RS 00605.221(A).

Unfortunately, there are instances in which the Social Security Administration does not clearly treat these terms as synonyms. R. at 93 ("months between periods of disability would be included in the freeze period"); R. at 97 ("period of disability for purposes of the freeze period never ended"). In other instances, it is almost im-possible to determine whether the Administration used the terms synonymously or not. POMS, RS 00605.210(A) ("[e]ntitlement to a freeze entitles [an individual] to a 'period of disability' "); POMS, RS 00605.-220(B) ("[f]or a year to be considered wholly within a period of disability, the freeze period must last from 1/1 through 12/31"). However, the Secretary has employed these terms as synonyms in the present case. *See supra* note 17, *citing* Objection Memo at 3, 5. Based on this treatment, and based on the Secretary's failure to otherwise define these terms or differentiate between them, we construe these terms to be synonymous.

20 C.F.R. § 404.1586(b) states that a blind individual who is not entitled to disability benefits, but who meets the definition of blindness, has a period of disability which "will continue." Unfortunately, the regulation does not specify how *long* it will continue—for the entire duration of the individual's blindness, or simply until some aspect of 42 U.S.C. § 416(i)(2)(D) is satisfied. The Social Security Administration's inconsistent treatment of the term also fails to clarify the issue, but the Secretary's final decision in the case at bar indicates that he would treat a "period of disability" differently for an individual who was blind than for one who was not:

> [T]he claimant is legally blind, and therefore, must use a disability freeze. This disability freeze, therefore, precludes the claimant from a computation method used for non-blind, disabled individuals with a second or succeeding period of disability.

R. at 12.

We find that the Secretary's treatment of "period of disability" in this case to be in error, because it conflicts with 42 U.S.C.

---

**16.** The Secretary described Shiner's period of disability in the following language:

> An insured worker may also apply to have her social security record reflect the fact that she is under a disability and *the length of time her disability lasts. This continuous period of time is called a 'period of disability'* ....
>
> \* \* \* \* \* \*
>
> [S]he continues to retain her status as a *'statutorily blind'* individual and as such *remains*

> *disabled for purposes of continuing her period of disability* under section 416.
>
> Objection Memo at 3, 5 (emphasis added).

§ 416(i)(2).[17] The Secretary's construction of this statute contradicts the express language of Congress and is therefore unreasonable. *See Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782; *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission,* 390 U.S. 261, 272, 88 S.Ct. 929, 935, 19 L.Ed.2d 1090 (1968). Congress drafted the Social Security Act such that "period of disability" is a term with a very specific definition. 42 U.S.C. § 416(i)(2). Because the end of a "period of disability" is clearly delineated and mandated by the statute, we hold that the correct definition of the term is the statutory definition. "Period of disability" does *not* mean the entire time during which an individual is disabled, nor any length of time other than as specifically provided in the statutory definition. 42 U.S.C. § 416(i)(2)(D).[18] Nonetheless, the Secretary's failure to apply the correct definition of this key term did not prevent him from ultimately reaching the correct computation of Shiner's benefits in this case.

### C. Computing Shiner's Benefits

Applying "period of disability" as defined by Congress, Shiner's initial "period of disability" commenced January 1, 1974, when she first met the insured status requirement. R. at 27; 42 U.S.C. § 416(i)(2)(C)(ii).[19] Although the Record is sketchy regarding events prior to 1982, apparently Shiner's waiting period also commenced in January 1974 and she was deemed to be 62 at that time. 42 U.S.C. §§ 423(c)(2), 423(a)(2)(A). Presumably this initial period of disability would have ended when she was deemed to be 65 three years later. 42 U.S.C. § 416(i)(2)(D)(i).

Shiner's benefits terminated in early 1982, when she engaged in substantial gainful activity. R. at 67–68. She became re-entitled to disability benefits in April 1984 by satisfying the definition of "disability" in 42 U.S.C. § 423(d)(1)(A). That definition is the same as the definition of "disability" in 42 U.S.C. § 416(i)(1)(A), and thus she became entitled to a new "period of disability" which also commenced in April 1984.[20] This second period of disability would also have ended according to the provisions of 42 U.S.C. § 416(i)(2)(D). She was deemed to be 62 again in April 1984 when she became reentitled to benefits which had previously terminated. 42 U.S.C. §§ 423(a)(1)(D)(ii), 423(a)(2)(B). Because she was deemed to be 62 again in April 1984, Shiner was ineligible to have her monthly disability benefit recomputed based on the DIB Freeze Recomputation Method.

The DIB Freeze Recomputation Method is provided for in POMS, RS 00605.532. A claimant is eligible for this method if the claimant's disability onset date and month of entitlement are "in the same year and the year is not entirely within a period of disability." *Id.* If these criteria are met, "a recomputation using that year's earnings may be given effective the following January." *Id.*

However, the DIB Freeze Recomputation Method is available *only* for claimants who have reached the actual[21] or assumed age of 65. POMS, RS 00605.532; R. at 3. Since Shiner was assumed to be 62 again in April 1984, she was not eligible for the DIB Freeze Recomputation Method. The Secretary thus correctly refused to

---

**17.** *See* discussion *infra* p. 1266.

**18.** As the agency entrusted to administer this act, the Social Security Administration should have been more careful in using this statutory term as it was specifically defined by Congress, especially in light of the extreme complexity of the disability benefit provisions in the Social Security Act, the regulations, and the POMS manual. We find it ironic that the Secretary construed the statutory definitions of "disability" so meticulously in his Objection Memo, and yet paid so little attention to the details of the statutory definition of "period of disability." *See* Objection Memo at 2–5.

**19.** This initial period of disability was based on her blindness satisfying the definition of "disability" in 42 U.S.C. § 416(i)(1)(B).

**20.** This period of disability was not based on her meeting the definition of "disability" in 42 U.S.C. § 416(i)(1)(A) based on blindness, but instead was based on her meeting the definition in 42 U.S.C. § 416(i)(1)(B) based on inability to engage in substantial gainful activity.

**21.** Shiner was born on May 11, 1953. R. at 49.

apply this method when he computed Shiner's benefits.

We therefore hold that the Secretary's final decision was supported by substantial evidence. The Secretary was correct in his computation of Shiner's monthly benefits for the period beginning in April 1984. He properly computed Shiner's benefits based on a primary insurance amount of $296.20, the amount in her termination month of April 1982. *See* 20 C.F.R. § 404.-252; R. at 4. Therefore, we affirm the Secretary's final decision in this matter.

## CONCLUSION

In summary, we reject the Magistrate's recommendation. Although we disagree with some of the reasoning underlying the Secretary's decision, we find that he correctly computed Shiner's monthly disability benefits. We therefore AFFIRM the Secretary's decision. The Clerk of Court shall enter judgment for the defendant.