Mary COSGROVE, Nancy Lella and John Shepsky, individually and on behalf of all others similarly situated, and Rose Singer, individually and as administratrix of the estate of Emil Singer, and on behalf of all others similarly situated, Plaintiffs,

v.

Otis R. BOWEN, in his capacity as Secretary of the Department of Health and Human Services, and Carolyn K. Davis, in her capacity as Administrator of the Health Care Finance Agency, Defendants.

No. 85 Civ. 4472 (GLG).

United States District Court,
S.D. New York.

Dec. 22, 1986.

Brown & Seymour, New York City, for plaintiffs; Whitney North Seymour, Jr., Claude P. Bordwine, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., for defendants; Mary Anne Wirth, Asst. U.S. Atty., Annette H. Blum, Regional Atty., Elizabeth Dusaniwskyj, Asst. Regional Atty., Office of the Regional Counsel, Dept. of Health and Human Services, of counsel.

GOETTEL, District Judge:

The plaintiffs bring this putative class action challenging an administrative regulation promulgated and applied by the defendants to determine reimbursement levels for certain physicians' services under Part B of the Medicare program.

### Background

The named plaintiffs are individuals enrolled in Medicare Part B,[1] a voluntary, federally subsidized health insurance program established under Title XVIII of the Social Security Act for persons 65 or older, or who are disabled. The defendants are Otis R. Bowen, Secretary of Health and Human Services (the "Secretary"), and Carolyn K. Davis, Administrator of the Health Care Finance Agency, the division that administers the Medicare program.

The Secretary authorizes private insurance carriers to evaluate and pay claims under Medicare Part B. Reimbursement is based on a determination of the "reasonable charge" for a particular medical service. 42 C.F.R. § 405.501. Insurance

---

**1.** Part A of the Medicare program covers institutional health costs, such as hospital expenses. Part B supplements Part A by insuring against a portion of other medical expenses, such as physicians' services. Eligible individuals pay monthly premiums if they choose to enroll in Part B. *See* 42 U.S.C. § 1395j *et seq.* (1982 & Supp. III 1985).

carriers are instructed to exercise judgment in reviewing claims so that determinations of reasonable charges are "realistic and equitable." 42 C.F.R. § 405.502(c). Several criteria are used to establish "reasonable charge" levels. First, the carrier looks at the actual charge billed by the physician for his or her services. Next, the carrier considers the "customary charge," which is defined as the uniform amount that an individual physician charges in the majority of cases for a particular procedure or service. 42 C.F.R. § 405.503(a). Finally, the carrier considers the "prevailing charge," which is an amount high enough to cover the customary charge in seventy-five percent of cases of similar services in a particular locality. 42 C.F.R. § 405.504. Carriers are authorized to pay the lowest of these three calculations.

In March 1983, the Secretary established a new regulation affecting the calculation of customary charges for doctors who had been working under a compensation agreement with a hospital and changed to direct "fee-for-services" billing to individual patients (or the patient's insurance carrier). The new regulation provides that "the carrier will determine the physician's customary charges on the basis of the former compensation agreement until the carrier has accumulated charge data from at least 3 months of the calendar year preceding the annual reasonable charge update."[2] 42 C.F.R. § 405.551(e). Thus, if a physician switched from hospital-based to direct billing after October 31, 1982, he or she would not have accumulated three months of charge data in 1982. Consequently, when "reasonable charges" were updated on July 1, 1983, based on calendar year 1982, the "customary charges" for such physicians' services were not adjusted to reflect their direct billing rates. Rather, they remained at their hospital compensation level until the next annual reasonable charge update, which should have occurred on July 1, 1984.

In 1984, however, Congress enacted the Deficit Reduction Act ("DRA"). Section 2306(a) of the DRA imposed a 15-month freeze on Medicare reimbursement for physicians' services for the period from July 1, 1984, to September 30, 1985.[3] 42 U.S.C. §§ 1395u(b)(4)(A) and (B) (Supp. II 1984). "Customary" and "prevailing" charges were frozen at levels set on July 1, 1983. The effect of the DRA freeze, in conjunction with 42 C.F.R. § 405.551(e), was to preclude physicians whose "customary charges" as of July 1, 1983, were based on their hospital compensation from increasing those rates in 1984, even if they would otherwise have been eligible for an update under 42 C.F.R. § 405.551(e).

Each named plaintiff underwent surgery in 1984 or 1985, and was billed directly for services rendered during the surgery. The plaintiffs submitted these bills to the insurance carrier designated to process their Medicare Part B claims. The insurance carrier approved only a fraction of the charges submitted, and each plaintiff received only 80% of the approved amount.[4] The reimbursement check sent to each plaintiff was accompanied by an "Explanation of Benefits," which stated that the amount approved was not the amount of the bill because the carrier had to select the lowest of the three possible calculations—actual, customary, or prevailing charge. For the plaintiffs' benefit claims, the carrier indicated that the amount approved was based on the physician's "customary charge." The plaintiffs contend that the "customary charge" applied to their benefit

2. Prior to 1984, Medicare Part B reimbursement levels were updated on July 1st of each year. The date of the annual reasonable charge update was subsequently changed to October 1. 42 U.S.C. § 1395u(b)(3).

3. The DRA freeze was extended through March 14, 1986, by Pub.L. Nos. 99–107, 99–155, 99–181, 99–189, & 99–201.

4. For each named plaintiff, the bill submitted, the amount approved, and the actual payment received are noted below. The Medicare Part B program only pays 80% of the amount approved for a covered medical service.

| Plaintiff | Bill Submitted | Amount Approved | Amount Paid |
| --- | --- | --- | --- |
| Cosgrove | $288.00 | $41.40 | $33.12 |
| Cosgrove | 648.00 | 96.60 | 78.28 |
| Lella | 216.00 | 34.50 | 27.60 |
| Shepsky | 540.00 | 89.70 | 71.76 |
| Singer | 360.00 | 69.00 | 55.20 |

claims was not as stated on the form.[5] Rather, because the physicians who rendered services to them had switched from hospital-based compensation to direct billing after November 1, 1982, the "customary charge" computation was limited by 42 C.F.R. § 405.551(e) and the DRA.

The plaintiffs allege that 42 C.F.R. § 405.551(e) is unlawful because it reduces by two-thirds the Medicare reimbursement that beneficiaries affected by it would otherwise be entitled to receive. Plaintiffs seek a declaratory judgment that regulation § 405.551(e) violates 42 U.S.C. § 1394u(b)(3) and is unlawful, null and void *ab initio*. Plaintiffs further allege that defendants' application of the DRA to freeze customary charges for former hospital-based physicians is arbitrary, capricious, and contrary to law. They seek an order directing defendants to require Medicare carriers to use actual customary charges for all physicians as of July 1, 1984, without regard to the DRA, or to require carriers to employ "statutory" customary charges rather than the provisions of 42 C.F.R. § 405.551(e). Plaintiffs also allege that defendants' application of customary charge calculations under 42 C.F.R. § 405.-551(e) violates Medicare beneficiaries' right to equal protection of the laws. Plaintiffs ask that defendants be directed to recalculate and reimburse members of the putative class who have been denied proper reimbursement because of defendants' application of this regulation. Finally, plaintiffs seek costs, expenses, and attorneys' fees.

Shortly after this action was filed and the plaintiffs moved to certify the class, the defendants moved to dismiss for lack of subject matter jurisdiction. The complaint asserts jurisdiction pursuant to 28 U.S.C. §§ 1361, 2201, and 2202. The plaintiffs also assert that the action arises under the United States Constitution and Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq*. Initially, the defendants asserted that judicial review of Part B Medicare claims is precluded, except for claims concerning eligibility for benefits. *See* 42 U.S.C. § 1395ff(a) and (b) (1982). All other Part B claims may only be considered in an administrative hearing under 42 U.S.C. § 1395u(b)(3)(C) and 42 C.F.R. § 405.801 *et seq*. Since the plaintiffs' claims do not concern eligibility for benefits, the defendants contended that this Court lacked subject matter jurisdiction to hear the case.

Meanwhile, in response to defendants' motion to dismiss, the plaintiffs cross-moved for summary judgment, seeking a declaration that 42 C.F.R. § 405.551(e) is null and void as a matter of law, and that its application violates plaintiffs' fifth amendment right to equal protection of the law. The defendants asked that we consider their motion to dismiss before addressing the plaintiffs' motions for summary judgment or class certification.

We reserved decision on all motions pending the Supreme Court's resolution of an identical jurisdictional issue. In June 1986, the Supreme Court decided the case of *Bowen v. Michigan Academy of Family Physicians*, —— U.S. ——, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986), which raised the question of whether Congress had "barred judicial review of regulations promulgated

---

5. The form noted that the discrepancy in the amount approved and the amount of the bill submitted was pursuant to subsection b of paragraph 5 on the back of the form. Paragraph 5 reads as follows:

 5. WHY THE AMOUNT APPROVED MAY BE LESS THAN THE AMOUNT BILLED. The Amount Approved is shown on the front of this notice. It does not necessarily reflect the current actual charges in your area. It is the lowest of the three amounts described below:

 a. The first is what you were charged for the service. This is shown under "billed" on the front of this notice.

 b. The second is the midpoint of the charges your doctor or supplier of medical services made during the calendar year prior to last July. This is the customary charge.

 c. The third is the prevailing charge for your area. This is the amount which is high enough to cover the customary charge in three out of four bills for this service. For physician services, this charge limit can increase each year only by a percentage determined by the Government to reflect overall changes in the economy.

under Part B of the Medicare program." *Id.* 106 S.Ct. at 2135. The Court held that "challenges to the validity of the Secretary's instructions and regulations, are cognizable in courts of law." *Id.* at 2141. Following this ruling, the defendants withdrew their jurisdictional challenge.[6]

The defendants, however, have raised a new challenge to our authority to consider plaintiffs' claims for relief. In April 1986, Congress enacted the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), P.L. 99–272. Section 9304 of COBRA amends 42 U.S.C. § 1395u(b) to alleviate the excessively low "customary charge" level for former hospital-based physicians who converted to direct billing on or after October 31, 1982. The statute provides that, for all physicians who were hospital-based at any time between October 31, 1982, and January 31, 1985, but were no longer hospital-based as of February 1, 1985, the Secretary must calculate customary charges based upon those physicians' actual charges billed during the twelve month period ending March 31, 1985.[7] This new customary charge calculation is applicable for physicians' services rendered during an 8–month period beginning May 1, 1986. The defendants have now filed a supplemental memorandum in support of their motion to dismiss, in which they contend that the enactment of this legislation moots the plaintiffs' claims.

The plaintiffs assert that the following claims have not been mooted: (1) that regulation § 405.551(e) is void *ab initio;* (2) that benefits for the period July 1, 1984, through April 30, 1986, should be recalculated for class members who received reduced benefits prior to the enactment of COBRA; and (3) that prospective relief is warranted since the statute was only made effective for eight months. As discussed below, the defendants' motion to dismiss is granted in part and denied in part, and the plaintiffs' motion for summary judgment is denied.[8]

### *Discussion*

1. Validity of 42 C.F.R. § 405.551(e).

We begin by noting that great deference must be accorded to an agency's interpretation of its governing statutes and any regulations promulgated to effectuate the goals of that statute. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). A party seeking to set aside agency action must demonstrate that the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance of law." 5 U.S.C. § 706(a)(A). *See St. Mary's Hospital of Troy v. Blue Cross and Blue Shield Association,* 788 F.2d 888, 890 (2d Cir.1986).

 Regulation 405.551(e) is not on its face arbitrary, capricious, or contrary to law. " 'Particularly in a program as complex and ripe with potential for abuse as Medicare, the Secretary has broad discretion to control excessive costs by adopting

---

6. The defendants had also argued that, even assuming jurisdiction predicated on 28 U.S.C. § 1361, the plaintiffs nevertheless failed to meet the stringent prerequisites for obtaining a writ of mandamus. *See Lovallo v. Froehlke,* 468 F.2d 340, 343 (2d Cir.1972), *cert. denied,* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973). Defendants also suggested that any constitutional claims the plaintiffs asserted were insubstantial, and, therefore, could not serve as a basis for federal jurisdiction. Since the plaintiffs here are challenging the validity of the Secretary's regulations, not simply the amount of benefits they received, the Supreme Court's holding in *Michigan Academy* establishes our jurisdiction under the Medicare statute, and we need not address defendants' alternate jurisdictional challenges.

7. In cases where physicians do not accept direct assignment of Medicare benefits from the insur-

er, the customary charge is deflated by an additional 15%. This would be applicable to the plaintiffs herein, who have asserted that the doctors for whose services they submitted Medicare claims would not accept direct assignment of benefits from the insurer.

8. The plaintiffs' summary judgment motion does not address all the alternative claims raised in their complaint. We deny summary judgment only as to the claims presented in plaintiffs' motion. However, in denying part of defendants' motion to dismiss, we have, in effect, granted summary judgment to the plaintiffs on a claim not addressed in their summary judgment motion. *See infra* note 13 and accompanying text. We reserve for subsequent decision the plaintiffs' motion for class certification.

general prophylactic rules....'" *Friedman v. Heckler*, 765 F.2d 383, 387 (2d Cir.1985) (quoting *Marina Mercy Hospital v. Harris*, 633 F.2d 1301, 1304 (9th Cir. 1980)). Requiring three months of billing to establish a "customary charge" is not unreasonable. The plaintiffs note, however, that for doctors embarking on a new practice, who would have no "customary charge," reimbursement levels are determined on the basis of the "prevailing charge" for analogous services within a particular locality. We have difficulty understanding why doctors converting from hospital-based to direct billing are not similarly treated. However, although this results in some unfairness and inequity, we cannot say it rises to the level of arbitrary and capricious. "[N]either the possibility of unfairness in a particular case nor the availability of alternatives to the adopted regulation renders the Secretary's choice invalid." *Friedman v. Heckler, supra*, 765 F.2d at 388, (citing *Knebel v. Hein*, 429 U.S. 288, 294, 97 S.Ct. 549, 553, 50 L.Ed.2d 485 (1977)). Consequently, as a matter of law, we must deny the plaintiffs' motion for summary judgment.[9] To the extent that any of the plaintiffs' claims rest solely on the application of 42 C.F.R. § 405.551(e), prior to its interaction with the DRA, we grant defendants' motion to dismiss those claims.[10]

2. Recalculation of Benefits.

■ The applicable section of the recent COBRA legislation was made effective for an 8-month period beginning May 1, 1986. Clearly, any claims that have arisen or may arise during that period have been rendered moot. However, the plaintiffs seek retroactive relief for the period from July 1, 1984, through April 30, 1986. This is the period during which the interaction of section 2306(a) of the DRA and 42 C.F.R. § 405.551(e) kept "customary charges" for certain physicians at exceedingly low levels.

■ The defendants argue that the passage of COBRA section 9304, providing only prospective relief, ratifies the Secretary's earlier interpretation of the interaction of 42 C.F.R. § 405.551(e) and the DRA, and precludes this Court from granting plaintiffs' request for retroactive relief. We disagree. Although both the House and the Senate proposed some retroactive relief, *see* S.Rep. No. 99–146, 99th Cong., 2d Sess. *reprinted in* [1986] U.S.Code Cong. & Ad.News 42, 270; H.R.Rep. No. 99–241 (I), 99th Cong., 2d Sess. *reprinted in* [1986] U.S.Code Cong. & Ad.News 579, 616–18, the statute as enacted neither granted nor precluded retroactive relief.[11] Furthermore, cases cited by defendants in support of this position are inconclusive.[12]

---

9. The plaintiffs' motion for summary judgment asserts that 42 C.F.R. § 405.551(e) is null and void as a matter of law, and that its application and extension violates plaintiffs' constitutional rights under the fifth amendment to equal protection of the law. Since the plaintiffs neither have asserted nor could assert that they fall within a "suspect classification," the burden remains upon them to demonstrate that the challenged government action is in no conceivable way rationally related to a legitimate state interest. The plaintiffs have not met this burden. At best, plaintiffs offer conclusory statements such as, "It is self-evident ... that the Secretary ... promulgated and implemented a wholly new policy through 42 CFR 405.551(e), with no statutory basis and which thereby deprives plaintiffs of their lawful and proper reimbursement," or "the defendants have created an arbitrarily low level of reimbursement." Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 23, 24. Consequently, the plaintiffs' constitutional equal protection claim must fail.

10. We recognize that this holding will necessarily affect the definition of the plaintiff class. The plaintiffs purport to represent all individuals nationwide who submitted Medicare Part B claims for the services of doctors who switched from hospital compensation to direct billing on or after November 1, 1982. However, since we find 42 C.F.R. § 405.551(3), standing alone, to be valid, the class may not include individuals whose Medicare benefits were reduced solely by operation of that regulation.

11. Congress, no doubt, considered the political and budgetary ramifications of giving retroactive effect to the new legislation. This Court, however, must consider the legal rather than financial or political basis for granting or denying a claim for retroactive relief that has been properly presented for judicial review.

12. The defendants argue that, "[w]here Congress has amended a statute without altering a known administrative construction of the statute, it

Under these circumstances, we find it appropriate to review this claim, bearing in mind the relevant standard set forth in 5 U.S.C. § 706(a)(A) for setting aside agency action.

■ Giving all due deference to the Secretary's interpretation of agency regulations, we nevertheless believe that the Secretary's application of the DRA freeze in conjunction with regulation 405.551(e) rises to the level of arbitrary and capricious, and must be set aside. Once the DRA took effect to freeze "customary" and "prevailing" charges for Medicare Part B claims, we believe that the Secretary abused his discretion by failing to consider the special circumstances created by the interaction of the DRA and 42 C.F.R. § 405.551(e). The regulations provide for adjustment of benefits based on specific and unusual circumstances. Clearly, the injustice caused by the interaction of these two provisions cried out for such adjustment. Moreover, other preexisting regulations direct that all determinations of reasonable charges be "realistic and equitable." 42 C.F.R. § 405.-502(c). Setting benefit rates for certain physicians at approximately two-thirds of the rates for the same services provided by other physicians, and continuing this disparity for more than two years, was neither realistic, equitable, nor reasonable. Consequently, we find the agency's action in not adjusting for this inequity was arbitrary, capricious, and an abuse of discretion. Accordingly, we deny the defend-

ants' motion to dismiss plaintiffs' claims for recalculation of benefits for the period July 1, 1984, through April 30, 1986, and direct that this recalculation be made.[13]

3. Prospective relief.

■ Finally, the plaintiffs seek a declaration granting them prospective relief upon the expiration of the 8–month period defined in COBRA section 9304. The defendants argue that this claim is premature. We agree. Congress may extend the effective period of the relevant statute, as it extended the effective period of the DRA. Alternatively, the Secretary may promulgate new regulations to establish customary charges for physicians who change their method of compensation. It is inappropriate for us to second guess the contemplated actions of either the Congress or the Secretary. Consequently, we grant the defendants' motion to dismiss plaintiffs' claim for prospective relief.

### Conclusion

The recent COBRA legislation amending the calculation of "customary charges" for physicians who, within a specified time period, switched from hospital-based compensation to direct billing, moots a portion of the plaintiffs' complaint. Consequently, we grant the defendants' motion to dismiss any part of the plaintiffs' action that seeks an adjustment in Medicare benefits for the effective period of this new legislation, *i.e.*, an 8–month period beginning May 1, 1986.

fairly may be said to have ratified that construction." Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint at 11. Defendants cite *CBS, Inc. v. FCC,* 453 U.S. 367, 382–85, 101 S.Ct. 2813, 2823–24, 69 L.Ed.2d 706 (1981); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381–82, 89 S.Ct. 1794, 1802–04, 23 L.Ed.2d 371 (1969); and *Grocery Manufacturers of America, Inc. v. Gerace,* 755 F.2d 993, 1000–01 (2d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 69, 88 L.Ed.2d 56 (1985). We glean from these cases that a court *may* construe congressional action in this fashion. However, none of these cases mandates such an interpretation. In view of this, we find it prudent to examine the facts and circumstances before us to see if such an interpretation is clearly warranted. As noted in the text, we find it is not.

**13.** This ruling is tantamount to a grant of summary judgment for the plaintiffs on a portion of their claim, albeit not a portion clearly addressed in their summary judgment motion. Nevertheless, the Secretary is instructed to recalculate "customary charges" as of July 1, 1984, without regard to the DRA, but giving effect to 42 C.F.R. § 405.551(e), for physicians who changed from hospital-based compensation to direct billing after November 1, 1982. This will redress the named plaintiffs' claims, since it appears that their physicians commenced direct billing on October 1, 1983, and, therefore, had accumulated three months of charge data in 1983, making them eligible for a reasonable charge update in 1984 but for the DRA freeze. Whether any further recalculation will be necessary must await the outcome of the class certification motion.

We also grant defendants' motion to dismiss plaintiffs' claim for prospective relief, since that claim is premature.

We deny the plaintiffs' motion for summary judgment to the extent it seeks a declaration that 42 C.F.R. § 405.551(e) is unlawful and void *ab initio,* or that it violates the plaintiffs' constitutional right to equal protection. However, we find that the Secretary's application of the DRA in conjunction with 42 C.F.R. § 405.551(e) was erroneous and must be corrected. Hence, we deny defendants' motion to dismiss plaintiffs' claim for recalculation of benefits for the period July 1, 1984, through April 30, 1986, and effectively grant the plaintiffs summary judgment on this claim. To the extent our decision may affect the pending motion for class certification, if the parties wish to submit further papers in support of or opposition to that motion, they may set a reasonable schedule for doing so.

SO ORDERED.