**Mary COSGROVE, et al., Plaintiff(s),**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, et ano, Defendant(s).**

**No. 85 Civ. 4472 (GLG).**

United States District Court, S.D. New York.

June 1, 1987.

GOETTEL, District Judge.

The defendants move to reargue this Court's opinion dated December 22, 1986, reported at 649 F.Supp. 1433 (the "Opinion"). The defendants also move to dismiss the claims of plaintiff Nancy Lella, because her alleged injury occurred on March 24, 1984, a date outside the relevant time period established in the Opinion. Since the plaintiffs consent to the severance and dismissal of plaintiff Lella, we need not further consider that portion of the defendants' motion. The plaintiffs oppose reargument, and move for entry of final judgment and for class certification.

At issue in this case is the validity of a regulation promulgated by the Secretary of Health and Human Services ("Secretary") that affects the calculation of benefits paid to participants in Medicare Part B, a voluntary, federally subsidized insurance program. As promulgated, 42 C.F.R. § 405.-551(e), provides that doctors converting from hospital-based compensation to direct "fee-for-service" billing must accumulate three months of direct billing to establish their individual "customary charges." Until then, their former hospital-based compensation is used to calculate their "customary charges." As noted in the Opinion, this results in some unfairness and inequity, since doctors who embark on a brand new practice are not similarly required to accumulate three months of billing to establish customary charges.[1] However, because of the great deference accorded to

the Secretary's rules, we held that section 405.551(e) was not, on its face, arbitrary and capricious. *See* Opinion at 1437–38. Thereafter, the Deficit Reduction Act ("DRA") froze "customary" and "prevailing" charges as they existed on July 1, 1983. The result of this for former hospital-based physicians who had not accumulated three months of direct billing during calendar year 1982, was to bind them to their former hospital-based "customary charges" for years, rather than months. At this point, we ruled, it became arbitrary and capricious, and an abuse of the Secretary's discretion, to continue applying section 405.551(e) in conjunction with the DRA.[2] The Opinion concluded that this ruling was tantamount to a grant of partial summary judgment to the plaintiffs. The defendants seek to reargue this for several reasons.

*Defendants' Motion for Reargument*

The defendants assert that this case was not ripe for summary judgment. To the extent that the defendants claim that they never received and, therefore, failed to respond to plaintiffs' 3(g) statement, we reject their argument. The plaintiffs' 3(g) statement was stamped "copy received" by the United States Attorney's office on November 7, 1985. That it may not have reached the proper assistant is not a problem for this Court to remedy. In any event, our ruling was not based on the defendants' failure to respond to the plaintiffs' 3(g) statement.

The defendants further contend that summary judgment was premature because they were not given an adequate opportunity to probe the nature and validity of the plaintiffs' claims. We did not rule on the validity of the plaintiffs' individual claims. Our decision was essentially a matter of statutory interpretation, which

1. Until a new physician has accumulated three months of actual charges, the customary charge for each service furnished by the physician is based on the 50th percentile of the array of weighted customary charges the carrier uses to determine the prevailing charge in the locality for the same service and specialty group. *See* Health Care Finance Agency's Medicare Carrier's Manual, § 5010.4(A).

2. The interaction of the DRA and section 405.-551(e) resulted in reduced benefits to Medicare participants who used these doctors' services because, in determining benefit reimbursement, Medicare carriers apply the lowest of three charge calculations—the doctor's actual charge, the prevailing charge in the area for a particular service, and the doctor's "customary charge." *See* Opinion at 1435.

effectively granted summary judgment to plaintiffs on their claim for recalculation of benefits for the relevant period. We see no reason to change that finding. However, recalculation does not necessarily mean reimbursement. The defendants have raised a substantial issue as to whether the named plaintiffs, or other potential plaintiffs, have actually been injured by the application of section 405.551(e) in conjunction with the DRA.[3] This has greater relevance to plaintiffs' motion for class certification and entry of final judgment, discussed below, than to defendants' motion to reargue.

Finally, the defendants contend that, because we found regulation 42 C.F.R. § 405.551(e) valid, we cannot penalize the Secretary for applying it in conjunction with the nondiscretionary DRA. We reject this argument as merely restating the defendants' initial position. Pursuant to rule 3(j) of the Local Civil Rules of the Southern and Eastern Districts of New York, a party seeking reargument must set forth matters or controlling decisions overlooked by the Court. The defendants fail to state any authority overlooked by this Court. However, this argument has alerted us to a matter in the Opinion that should be corrected. In ruling that the Secretary should not have applied regulation 405.551(e) in conjunction with the DRA, we ordered recalculation of customary charges for the plaintiffs' Medicare claims, giving effect to 42 C.F.R. § 405.551(e), without regard to the DRA. *See* Opinion at 1439 n. 13. This was incorrect. The regulation, not the DRA, must yield.

█ The defendants argue that they may no more disregard section 405.551(e) than they can the DRA because, by statute, the Secretary "shall" require any Medicare carrier to "take[ ] into consideration the customary charges for similar services generally made by the physician or other person furnishing such services, as well as the prevailing charges in the locality for similar services." 42 U.S.C. § 1395u(b)(3)(F). The defendants contend that they would be violating this directive if they ceased applying section 405.551(e), as frozen in place by the DRA. This is nonsense. The DRA did not freeze regulations, it froze customary and prevailing charges. Had regulation 405.551(e) not existed when the DRA became effective, customary charges for former hospital-based physicians would have been frozen at the amount calculated for such charges pursuant to other statutory and regulatory provisions. By invalidating section 405.551(e) as applied in conjunction with the DRA, we are merely asking the Secretary to determine what these physicians' customary charges would have been as of July 1, 1984, had they been established under other methods of calculation and frozen in accordance with the DRA.

The plaintiffs propose two ways to handle this recalculation. First, they suggest calculating customary charges in the same manner used for new physicians who have not yet accumulated three months of billing data. *See supra* note 1. This procedure has recently been adopted by the Secretary with respect to services furnished on or after January 1, 1987, by doctors who switched from hospital-based compensation to direct billing. *See* 52 Fed. Reg. 6148 (March 2, 1987).[4] Alternatively, since these physicians' customary charges would in all likelihood be as high or higher than the maximum allowable prevailing charge ("MAPC") for a particular service, and since Medicare carriers are authorized to use the lowest of the three possible charge bases (i.e., actual, customary, or prevailing charge), carriers could be instructed to assume that the MAPC would be the lowest of these three and use it as the basis for calculating benefits to Medicare participants affected by certain physicians' change in billing procedure.[5]

---

**3.** In other words, did they pay higher medical fees than they would otherwise have paid, but for the interaction of 42 C.F.R. § 405.551(e) and the DRA.

**4.** In effect, this continues the remedial measures established in April 1986 under the Consolidated

Omnibus Budget Reconciliation Act ("COBRA"). *See* Opinion at 1437.

**5.** We express no opinion on the method to be used to recalculate these benefits. While the instant motions have been pending, the parties

To the extent that we erroneously instructed the Secretary to disregard the DRA, the defendants' motion to reargue is granted, and note 13 of the Opinion is amended to reflect that the Secretary shall recalculate "customary charges," using operative statutes and regulations other than 42 C.F.R. § 405.551(e), for Medicare claims submitted by the plaintiffs for services rendered to them between July 1, 1984, and April 30, 1986, by physicians who changed from hospital-based compensation to direct billing after November 1, 1982. In all other respects, the defendants' motion to reargue is denied.

*Plaintiffs' Motion for Entry of Judgment and Class Certification*

■ The plaintiffs have moved for entry of final judgment and for class certification. The defendants oppose class certification, contending that the plaintiffs have failed to demonstrate the elements of numerosity, typicality, and commonality required for maintenance of a class action. Initially, we note that little if any discovery appears to have been completed and neither party has explained the reason for this delay. Much of the information needed to substantiate the requirements for class certification would seem to be within defendants' knowledge and control. On the record before us, we cannot assess whether the elements required for a class action have been met. Consequently, we deny the plaintiffs' motion for class certification and entry of final judgment,[6] without prejudice

to renewal of the motion after discovery on the issues relevant to certification of the class.[7] Discovery should proceed forthwith, both to identify potential class members and to determine whether they sustained any actual injury relevant to this suit.

SO ORDERED.

---

have negotiated suggested wording for the proposed class, *see infra* note 7, and for a final judgment. Since we are not granting the latter relief at this time, the parties may adjust the language of their proposal as they see fit in accordance with this decision.

6. The defendants also contend that a judgment in plaintiffs' favor requiring recalculation of Medicare benefits would violate the Government's sovereign immunity, because it would require retroactive monetary relief, as to which the Government has not waived its immunity. *See* 5 U.S.C. § 702. This issue, raised for the first time in opposing plaintiffs' motion for entry of judgment, is little more than another motion to reargue. Defendants failed to raise the question of sovereign immunity either in their own motion to dismiss or in opposing plaintiffs' earlier motion for summary judgment. We have already ruled that recalculation

of benefits must be made. We decline to consider this new defense at this late date.

7. The parties have provisionally agreed upon the following redefinition of the proposed class:

all nationwide Medicare Part B claimants for reimbursement for medical services provided between July 1, 1984 and April 30, 1986 by formerly salaried hospital-based physicians (who changed over to direct fee-for-service billing on or after November 1, 1982 and who provided the services after they changed to direct fee-for-service billing), and who were reimbursed on their claims at an amount less than they would have received by giving effect to 42 C.F.R. § 405.551(e) without the application of the Deficit Reduction Act of 1984. In view of the correction to the Opinion discussed above, some revision in the final phrase will be required.