898 F.2d 332
 29 Soc.Sec.Rep.Ser. 134, Medicare&Medicaid Gu 38,464
Mary COSGROVE and John Shepsky, individually and on behalf
of all others similarly situated, and Rose Singer,
individually and as administratrix of the estate of Emil
Singer, and on behalf of all others similarly situated,
Plaintiffs-Appellees,
v.
Otis R. BOWEN, Secretary of the Department of Health and
Human Services, and Carolyn K. Davis,
Administrator of the Health Care Finance
Administration, Defendants-Appellants.
 No. 15, Docket 89-6040.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 25, 1989.
Decided March 14, 1990.
 
 Whitney N. Seymour, Jr., New York City (Brown & Seymour, Richard L. Revesz, Craig A. Landy, of counsel), for plaintiffs-appellees.
 Craig A. Stewart, Asst. U.S. Atty., S.D.N.Y. (Benito Romano, U.S. Atty., S.D.N.Y., Richard W. Mark, Asst. U.S. Atty., S.D.N.Y., Lorraine Novinski, Asst. Regional Counsel, U.S. Dept. of Health and Human Services, Region II, of counsel), for defendants-appellants.
 Before OAKES, Chief Judge, KEARSE and ALTIMARI, Circuit Judges.
 ALTIMARI, Circuit Judge:
 
 
 1
 In this case, we consider the method for calculating reimbursement under Medicare Part B for services performed by certain physicians between July 1, 1984 and April 30, 1986. The disputed method of calculation applied to services performed by physicians who had been salaried hospital employees, but who had left the hospital's employ and converted to direct fee-for-service billing on or after November 1, 1982. Plaintiffs-appellees Mary Cosgrove, John Shepsky, and Rose Singer challenged the defendants-appellants Secretary of the Department of Health and Human Services (the "Secretary") and the Administrator of the Health Care Financing Administration's application of the regulation which specified how customary charges were to be calculated for the newly direct-billing physicians. 42 C.F.R. Sec. 405.551(e) (1983). Plaintiffs contended, inter alia, that defendants' continued application of section 405.551(e) in conjunction with provisions of the Deficit Reduction Act of 1984, Pub.L. No. 98-369, Sec. 2306 (codified at 42 U.S.C. Sec. 1395u(b)(4)(B) (Supp. II 1984)) ("DRA"), was arbitrary and capricious. The United States District Court for the Southern District of New York (Goettel, J.) agreed, and directed that defendants recalculate the reasonable charges for services performed by the fee-for-service physicians. 649 F.Supp. 1433 (1986), and 668 F.Supp. 163 (1987). On this appeal, defendants contend that continued application of section 405.551(e) was not arbitrary and capricious. For the reasons that follow, the judgment of the district court is affirmed.
 
 BACKGROUND
 
 2
 The reimbursement rate under Medicare Part B is based upon the "reasonable charge" for a particular medical service. 42 U.S.C. Sec. 1395u(b). Pursuant to section 1395u(b), and the regulations promulgated thereunder, the reasonable charge is equal to the lowest of the following: (1) the actual charge billed by the physician; (2) the "prevailing charge" for similar services in the same locality, 42 C.F.R. Sec. 405.504; and (3) the treating physician's "customary charge." Id. Sec. 405.503(a).
 
 
 3
 In March of 1983, the Secretary established a regulation concerning the calculation of customary charges for physicians who converted to direct billing:
 
 
 4
 If a physician who has been compensated by or through a provider (or other entity) for physician services to individual patients ends his or her compensation agreement and instead bills all patients, or their insurers, directly for his or her services, the carrier will determine the physician's customary charges on the basis of the former compensation agreements until the carrier has accumulated charge data from at least 3 months of the calendar year preceding the annual reasonable charge update.
 
 
 5
 42 C.F.R. Sec. 405.551(e). Prior to 1984, the annual reasonable charge update was performed on July 1. Thus, under section 405.551(e), the customary charge for a service performed by a physician who converted from a hospital employee to direct fee-for-service billing after October 31, 1982 would continue to be based upon the physician's hospital compensation level until July 1, 1984.
 
 The DRA, enacted in 1984, specified that:
 
 6
 In determining the reasonable charge under paragraph (3) for physicians' services furnished during the 15-month period beginning July 1, 1984, the customary charges shall be the same customary charges as were recognized under this section for the 12-month period beginning July 1, 1983.
 
 
 7
 42 U.S.C. Sec. 1395u(b)(4)(B) (Supp. II 1984). Subsequently, the freeze of customary charges imposed by the DRA was extended through March 14, 1986.
 
 
 8
 As a consequence of the application of 42 C.F.R. Sec. 405.551(e) in conjunction with the DRA, the customary charge for certain physicians, and hence the reimbursement to their patients, continued to be based on the physicians' hospital salary years after the physician switched to fee-for-service billing. Thus, reimbursements were made to some patients at a rate which was a small fraction of the physicians' actual charge, and a small fraction of the amount which would have been reimbursed had the physician switched to direct billing prior to November 1, 1982. For example, Mary Cosgrove submitted bills for covered services which totalled $936. Under the disputed method of calculation, the total amount of approved reimbursement to her was $138.
 
 DISCUSSION
 
 9
 The Secretary contends that the continued application of section 405.551(e) after the passage of the DRA was not arbitrary and capricious. We disagree.
 
 
 10
 As the Secretary concedes, the purpose of section 405.551(e) was merely to facilitate the complex task of setting customary charges by ensuring that sufficient data existed to set the charges accurately. The regulation was not intended to hold down the customary charges for physicians who converted to direct fee-for-service billing.
 
 
 11
 Under Medicare Part B, "similar services ... are to be compensated equally, regardless of who performs them." Michigan Academy of Family Physicians v. Blue Cross & Blue Shield, 728 F.2d 326, 331 (6th Cir.1984), aff'd after remand, sub nom. Bowen v. Michigan Academy, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). Regulations in place prior to section 405.551(e) directed that all determinations of reasonable charges be "realistic and equitable." 42 C.F.R. Sec. 405.502(c). Moreover, the regulations now provide for adjustment of benefits where the existing rules result in grossly deficient charges. Id. Sec. 405.502(g).
 
 
 12
 We are reluctant to interfere with the Secretary's discretion in administering Medicare. See St. Mary's Hosp. v. Blue Cross & Blue Shield Ass'n, 788 F.2d 888, 890 (2d Cir.1986). Nevertheless, we agree with Judge Goettel's conclusion that setting reimbursement rates for the newly direct-billing physicians at a small fraction of "the rates for the same services provided by other physicians, and continuing this disparity for more than two years, was neither realistic, equitable, nor reasonable." Accordingly, we agree with the district court's finding that "the agency's action in not adjusting for this inequity was arbitrary, capricious, and an abuse of discretion."
 
 
 13
 Finally, we express no view at this time regarding whether plaintiffs are entitled to attorneys' fees. The district court expressly reserved this issue for reconsideration "at an appropriate time following appeal when such an application is actually made." Insofar as the appeal seeks review of this issue, it is dismissed.
 
 CONCLUSION
 
 14
 For the reasons stated above, the judgment of the district court is affirmed.