999 F.2d 630
 41 Soc.Sec.Rep.Ser. 569, Medicare & Medicaid Guide
P 41,551
Mary COSGROVE and John Shepsky, individually and on behalf
of all others similarly situated, and Rose Singer,
individually and as administratrix of the estate of Emil
Singer, and on behalf of all others similarly situated,
Plaintiffs-Appellees,
v.
Louis W. SULLIVAN, M.D., Secretary of the U.S. Department of
Health and Human Services; J. Michael Hudson,
Acting Administrator of the Health Care
Financing Administration,
Defendants-Appellants.
 No. 283, Docket 92-6094.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 1, 1992.
Decided July 21, 1993.
 
 Lorraine S. Novinski, Sp. Asst. U.S. Atty., S.D.N.Y., New York City (Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, Thomas A. Zaccaro, Asst. U.S. Atty., of counsel), for defendants-appellants.
 Whitney North Seymour, Jr., New York City, (Craig A. Landy, Brown & Seymour, New York City, of counsel), for plaintiffs-appellees.
 Before: LUMBARD, WINTER and WALKER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This appeal raises the question of whether a judicial decision is a "final determination" within the meaning of 42 U.S.C. § 1395l (j) triggering the accrual of interest on Medicare underpayments. See Cosgrove v. Sullivan, 783 F.Supp. 769 (S.D.N.Y.1991).
 
 
 2
 This case has a lengthy history, including several opinions detailing the case's factual background, see, e.g., Cosgrove v. Bowen, 649 F.Supp. 1433, 1434-37 (S.D.N.Y.1986), aff'd, 898 F.2d 332 (2d Cir.1990); Cosgrove v. Bowen, 668 F.Supp. 163, 164 (S.D.N.Y.1987), aff'd, 898 F.2d 332 (2d Cir.1990), familiarity with which is assumed. In 1986, appellees brought this nationwide class action to challenge the administrative regulation used to determine reimbursement levels for certain physician services under Part B of the Medicare program. On November 16, 1988, Judge Goettel entered a final judgment holding that appellees were entitled to recoupment of various Medicare underreimbursements and ordering appellants to calculate and pay the underpayments. Cosgrove v. Bowen, No. 85 Civ. 4472 (S.D.N.Y. Nov. 16, 1988). He also ordered that, in the event the repayments were not completed within six months of the decision, status reports be filed with the court every six months until the money was fully paid. The underpayments were not completed when this appeal was argued.
 
 
 3
 In 1991, the claimants sought interest on the underpayments pursuant to 42 U.S.C. § 1395l (j), which states:
 
 
 4
 Whenever a final determination is made that the amount of payment made ... was in excess of or less than the amount of payment that is due, and payment of such excess or deficit is not made (or effected by offset) within 30 days of the date of the determination, interest shall accrue on the balance of such excess or deficit not paid or offset....
 
 
 5
 Appellees maintained that the district court's November 16, 1988 final judgment was a "final determination" within the meaning of Section 1395l (j). The Secretary argued that for purposes of Section 1395l (j), "final determinations" do not include judicial decisions. Judge Goettel concluded otherwise and held that the accrual of interest under the statute had been triggered. Cosgrove, 783 F.Supp. at 779, 781.
 
 
 6
 Appellants contend first that Judge Goettel lacked jurisdiction. With regard to claims arising prior to January 1, 1987,[1] such as those in the instant matter, 42 U.S.C. § 1395ff provides that courts lack subject matter jurisdiction to review the specific calculation of an individual part B claim.[2] Appellants thus seek to characterize the present dispute as involving challenges to such calculations. See, e.g., Anderson v. Bowen, 881 F.2d 1 (2d Cir.1989); Kuritzky v. Blue Shield of W.N.Y., Inc., 850 F.2d 126 (2d Cir.1988) (per curiam), cert. denied, 488 U.S. 1006, 109 S.Ct. 787, 102 L.Ed.2d 778 (1989). We disagree.
 
 
 7
 This is not a dispute over a specific calculation of an amount due an individual. Rather, it is a dispute over a rule of general applicability involving the meaning of a statute and a regulation. Courts have subject matter jurisdiction over such cases. Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). Michigan Academy held that 42 U.S.C. § 1395ff proscribes only challenges to a carrier's determination of the reasonableness of a specific amount owed on a particular claim, rather than to the propriety of the general rules or methods by which carriers compute reimbursements. Id. at 670-82, 106 S.Ct. at 2135-42. Appellants' jurisdictional argument thus lacks merit.
 
 
 8
 Second, appellants contend that Judge Goettel erred in not deferring to the Secretary's comments in the Preamble accompanying the 1991 revisions to 42 C.F.R. § 405.376, the regulation implementing the interest provisions of Section 1395l (j). The Secretary's comments state that final determinations are "administrative, not judicial, determinations; therefore, there is no interest obligation under these regulations for judicial determinations." 56 Fed.Reg. 31332, 31335 (1991); see also National Medical Enter., Inc. v. Sullivan, 960 F.2d 866 (9th Cir.1992) (affirming decision that a judicial decision did not commence the accrual of interest on Medicare part A claims).
 
 
 9
 Reviewing courts must give the Secretary's interpretations deference with regard to a statute under his purview so long as it is a permissible construction of the statute. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-45, 104 S.Ct. 2778, 2781-83, 81 L.Ed.2d 694 (1984). Judge Goettel concluded the Secretary's interpretation to be contrary to the regulation itself. In doing so, he, as appellees do on this appeal, relied upon the definition of final determination found in Section 405.376(c)(1)(ii)(B) and upon references to judicial decisions in the regulations. See Cosgrove, 783 F.Supp. at 774-76.
 
 
 10
 With regard to the definition, Section 405.376 of the pertinent regulations defines a final determination as, inter alia, "[a] written determination of an underpayment." 42 C.F.R. § 405.376(c)(1)(ii)(B). Although a judicial decision might easily fall within that language, the only portion of the regulation requiring the payment of interest on underpayments states:
 
 
 11
 If an intermediary or a carrier makes a final determination that an underpayment exists, interest to the provider or the supplier will accrue from the date of notification of the underpayment.
 
 
 12
 42 C.F.R. § 405.376(e)(4) (emphasis added). There is thus nothing in the regulation expressly authorizing interest on underpayments to commence from the rendering of a judicial decision.
 
 
 13
 With regard to the mention of judicial decisions, Section 405.376 states that "[e]xcept as required by any subsequent ... judicial reversal, interest accrues from the date of final determination...." 42 C.F.R. § 405.376(c)(2). The same section later states that "[i]f an overpayment or an underpayment determination is reversed administratively or judicially, ... appropriate adjustments will be made ... [to] the amount of interest charged." 42 C.F.R. § 405.376(h)(2). However, the mention of subsequent judicial decisions relates only to stopping rather than starting the accrual of interest. There is thus nothing in the regulations indicating that judicial decisions are final determinations commencing the accrual of interest on underpayments, and the Preamble is consistent with the regulations.
 
 
 14
 As the Supreme Court stated in Chevron, the Secretary's interpretation of a statute must be upheld if reasonable and not in conflict with congressional intent. See 467 U.S. at 842-45, 104 S.Ct. at 2781-83. Although Section 1395l (j) might be read to include judicial rulings as "final determination[s]," the Secretary's narrower interpretation is not unreasonable because Congress's concern in enacting Section 1395l (j) was that the "assessment of interest ... will provide incentives for debtors to repay overpayments more promptly." 47 Fed.Reg. 54811, 54813 (1982); see also Cosgrove, 783 F.Supp. at 780-81. Congress was thus concerned with facilitating the recoupment of overpayments, rather than underpayments, and the Secretary's interpretation is reasonable.
 
 
 15
 Reversed.
 
 
 
 [1]
 On January 1, 1987, the Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99-509, § 9341, 100 Stat. 1874, 2037-38 (codified at 42 U.S.C. § 1395ff), went into effect. It granted part B claimants the authority to seek judicial review of their payment determination provided they met certain conditions, such as presentment to the Secretary and exhaustion of all administrative remedies. See Abbey v. Sullivan, 978 F.2d 37, 40 (2d Cir.1992); National Kidney Patients Ass'n v. Sullivan, 958 F.2d 1127, 1130 (D.C.Cir.1992) (en banc ), cert. denied, --- U.S. ----, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993). With these 1986 statutory changes, Congress has "relegat[ed] to irrelevancy the Erika/ Michigan Academy dichotomy" between nonreviewable B claim determinations and reviewable applications of regulations on part B claims. See Abbey, 978 F.2d at 42
 
 
 [2]
 Title 42 U.S.C. § 1395ff(b)(2)(B) (1988) provides, in relevant part, "under part B of this subchapter ... judicial review shall not be available to the individual ... if the aggregate amount in controversy is less than $1,000."