**Margaret H. KEEFE, on Behalf of Francis P. KEEFE, Plaintiff–Appellant,**

v.

**Donna E. SHALALA, Secretary of Health and Human Services, Defendant–Appellee.**

No. 358.

**Docket No. 95–6057.**

United States Court of Appeals, Second Circuit.

Argued Oct. 23, 1995.

Decided Dec. 13, 1995.

Anthony Szczygiel, Legal Services for the Elderly, Disabled or Disadvantaged of Western New York, Inc., Buffalo, NY, for Plaintiff–Appellant.

John E. Gura, Jr., Assistant Regional Counsel, Office of the General Counsel, U.S. Dep't of Health and Human Services, New York City (Patrick H. NeMoyer, U.S. Attorney, Western District of New York, Harriet S. Rabb, General Counsel, HHS, Annette H. Blum, Chief Counsel–Region II, HHS, of counsel), for Defendant–Appellee.

Before: FEINBERG, WALKER, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Plaintiff Margaret Keefe, on behalf of her late husband Dr. Francis Keefe, appeals from a judgment entered in the United States District Court for the Western District of New York (Richard J. Arcara, *Judge* ), approving and adopting the recommendation and report of Magistrate Judge Leslie G. Foschio. The judgment affirmed the Secretary of Health and Human Services' denial of reimbursement under Medicare Part B for air ambulance services provided to Dr. Keefe. Because we believe that the Secretary properly applied the Medicare regulations, we affirm.

## I. BACKGROUND

Dr. Francis Keefe, an 82–year–old man, was visiting St. Louis, Missouri, on a pleasure trip. During his visit, he fell and broke his right hip. He was admitted to St. Louis University Hospital where his hip was replaced with a prosthesis. Nine days later, Dr. Keefe was transferred to St. Francis Hospital in his hometown of Olean, New York, by air ambulance according to what his doctors described as his "family's wish for the patient to be closer to home for care." Mrs. Keefe filed a claim for $3,456 with Dr. Keefe's Medicare Part B insurance carrier, seeking reimbursement for the cost of the air ambulance. The carrier denied coverage, and an administrative law judge upheld the

denial. After the Appeals Council denied Mrs. Keefe's request for review, she challenged the determination by filing this action in the United States District Court for the Western District of New York.

Magistrate Judge Leslie G. Foschio issued a Report and Recommendation on October 19, 1994, finding that the Secretary's decision to deny Medicare coverage should be affirmed and the plaintiff's complaint dismissed. Judge Arcara overruled the plaintiff's objections to the magistrate's report and entered a judgment in favor of the Secretary. This timely appeal followed.

## II. DISCUSSION

Plaintiff argues that the Secretary has misapplied the relevant Medicare regulations, and that she is entitled to reimbursement for the cost of her husband's transportation by air ambulance from St. Louis University Hospital to the hospital in Olean, New York. We find that the Secretary correctly applied the Medicare regulations.

 We must uphold the Secretary's findings of fact if they are supported by "substantial evidence," 42 U.S.C. §§ 405(g), 1395ff(b), but review the Secretary's conclusions of law *de novo. See Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir.1984) ("Where an error of law has been made that might have affected the disposition of the case, this court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal.") (citation and internal quotation marks omitted). Ultimately, however, the claimant bears the burden of proving her entitlement to Medicare coverage. *Friedman v. Secretary of Dep't of HHS,* 819 F.2d 42, 45 (2d Cir.1987).

Acting under the authority of 42 U.S.C. § 1395x(s)(7),[1] the Secretary has promulgated regulations defining the extent to which ambulance services are covered by Medicare

---

1. According to 42 U.S.C. § 1395x(s)(7), "medical and other health services" covered by Medicare Part B include "ambulance service where the use of other methods of transportation is contraindicated by the individual's condition, but only to the extent provided in regulations."

Part B. According to 42 C.F.R. § 410.40(c) (1994),

> Medicare part B pays for ambulance transportation of a beneficiary—
>
>> (1) To a hospital ... from any point of origin; [or]
>>
>> (2) To his or her home, from a hospital. ...

Subsection (e) of that regulation limits Medicare payments for such ambulance services

> to the amounts that would be paid for transportation—
>
>> (1) To an appropriate hospital ... in whose locality the beneficiary is located or, if the beneficiary is not in the locality of an appropriate hospital ..., to the nearest appropriate hospital ...;
>>
>> (2) To the beneficiary's home from a hospital ... in whose locality the home is located, or from the nearest appropriate hospital. ...

Mrs. Keefe claims that St. Francis Hospital was the "nearest appropriate hospital" for Dr. Keefe—indeed, the only appropriate hospital—because family involvement is critical in the discharge planning of Medicare beneficiaries, and Dr. Keefe's family was in Olean. Alternatively, she claims that Dr. Keefe was in fact transported "home" when he was flown from St. Louis to Olean—either (a) because the term "home" means hometown, not personal residence; or (b) because St. Francis Hospital was in fact Dr. Keefe's home, since his health had deteriorated to the point that he could no longer return to his former residence. We address each contention in turn.

### A. Was St. Francis Hospital in Olean, N.Y., the "nearest appropriate hospital" under 42 C.F.R. § 410.40(e)(1)?

■ Dr. Keefe's flight from St. Louis to Olean clearly satisfied the "origins and destinations" requirement of § 410.40(c)(1), which requires only that a patient be transported "to a hospital ... from any point of origin."

The controversy concerns § 410.40(e)(1), which authorizes payment for ambulance services only to the "nearest appropriate hospital." An "appropriate hospital" is defined in § 410.40(a) as "a hospital ... that is capable of providing the required level and type of care for the patient's illness or injury and ... has available the type of physician or physician specialist needed to treat the patient's condition." Furthermore, Medicare Carriers Manual § 2120.4(D) states that a distant hospital may be deemed the "appropriate facility" if "the beneficiary's condition requires ... specialized services available only at the more distant hospital."

The Secretary's finding that Dr. Keefe was already admitted to the nearest appropriate hospital (St. Louis University Hospital) is a factual determination that must be accepted if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1395ff(b). The Secretary argues that substantial evidence supports her determination because the same medical and rehabilitative services were available at both the St. Louis and Olean hospitals. In other words, the St. Louis hospital both provided the "required level and type of care" for Dr. Keefe's illness and also had available "the type of physician or physician specialist to treat the patient's condition." 42 C.F.R. § 410.40(a).

Mrs. Keefe argues that St. Francis Hospital was the "nearest appropriate hospital" for her husband because it was the only facility that offered "specialized discharge planning services, including hospital staff, family and patient involvement." She claims that family-centered discharge planning is part of the "required level and type of care for the patient's illness or injury" that makes a hospital "appropriate" under § 410.40(a). Mrs. Keefe argues, moreover, that both Congress and Dr. Keefe's treating physician recognized the importance of family involvement in discharge planning.

Her contention is not persuasive. First, it is true that Congress and HHS require hospitals to implement a discharge planning process. 42 U.S.C. § 1395x(e)(6), (ee); see also 42 C.F.R. §§ 482.21(b), 482.43 (1995). But family involvement in that process is not mandated by statute or regulation. Mrs. Keefe cites only a provision in the Medicare Intermediary Manual, which permits patients to remain hospitalized near their families when alternative nursing facilities are available only at great distance from their fami-

lies. Medicare Intermediary Manual § 3421.1(C) ("As a general rule, a community or local geographic area is not defined in such a way as to require a patient be taken away from his family and transported over great distances.") Although this provision clearly demonstrates a preference (perhaps even a strong one) for family involvement in the extended-care setting—a preference that would often make family proximity a critical factor in defining an appropriate nursing home for a Medicare beneficiary—it certainly does not mandate the transfer of patients between acute-care hospitals solely to promote family involvement in discharge planning.

Mrs. Keefe also cites numerous studies showing the importance of family involvement in the recuperation and rehabilitation of patients. These independent studies, however, do not demonstrate a statutory or regulatory requirement that families be incorporated into a patient's discharge planning. Like the lone statement in HHS's internal procedures manual, these independent studies do not imply any requirement that a patient be transferred to a hospital near his family to facilitate their involvement in that process. Accordingly, we cannot say that HHS erred in failing to consider family proximity when deciding that substantial evidence showed that St. Louis University Hospital was an appropriate hospital for Dr. Keefe.

■ Second, Mrs. Keefe argues that the Secretary should have deferred to the opinion of Dr. Keefe's treating physicians that St. Francis Hospital was the only appropriate hospital for his recuperation because it was closer to his family. But it is not clear either (1) that the "treating physician rule" applies to Medicare determinations as it does to Social Security disability determinations or (2) that Dr. Keefe's treating physicians actually thought that St. Francis Hospital was the only appropriate hospital for him.

In Social Security disability cases, the "treating physician rule" (now codified at 20 C.F.R. § 404.1527) generally requires HHS to give controlling weight to the medical opinion of an applicant's treating physician. Mrs. Keefe argues that the treating physician rule also applies to Medicare cases. The codified version of the treating physician rule does not by its terms apply to Medicare cases. And even before codification, the Second Circuit repeatedly declined to decide whether its judicially crafted Social Security rule applied in the Medicare context. *See, e.g., State of New York v. Secretary of HHS,* 924 F.2d 431, 433–34 (2d Cir.1991).

> But this Court has suggested that while the considerations bearing on the weight to be accorded a treating physician's opinion are not necessarily identical in the disability and Medicare contexts, we would expect the Secretary to place significant reliance on the informed opinion of a treating physician and either to apply the treating physician rule, with its component of 'some extra weight' to be accorded that opinion, … or to supply a reasoned basis, in conformity with statutory purposes, for declining to do so.

*State of New York v. Sullivan,* 927 F.2d 57, 60 (2d Cir.1991). It is therefore more than possible that some version of the treating physician rule could well apply in Medicare cases. *See, e.g., Klementowski v. Secretary, Dep't of HHS,* 801 F.Supp. 1022, 1025–26 (W.D.N.Y.1992) (holding that the treating physician rule applies in a case where a plaintiff sought reimbursement for air ambulance services under Medicare Part B).

Even if the treating physician rule did apply in Medicare cases, however, Mrs. Keefe has not produced a medical opinion from her husband's treating physician that could be given controlling weight. After reviewing Dr. Keefe's fragile medical condition, his St. Louis doctor stated:

> It was important for Mr. Keefe to return home so that Mr. Keefe, in his emotionally and physically upset state, could allow his family to participate in his recovery. He was alone in St. Louis while his wife and children were home in the Olean area.

> The only available and reasonable way to transfer this medically complex patient was by air ambulance, which was done on June 6, 1988.

> For the reasons stated above, I conclude that air ambulance transportation was rea-

sonable and necessary for the further treatment of Mr. Keefe.

There can be little doubt that the physician thought a transfer to Olean was desirable, but it is quite a stretch to say that he considered St. Francis Hospital to be the *only* appropriate hospital for Dr. Keefe. The most that we can read into the doctor's statement is that St. Francis Hospital was a relatively more appropriate facility than St. Louis University Hospital—not that St. Louis was an inappropriate facility. What the physician's letter says, and says unequivocally, is that Dr. Keefe required medical services during his transportation to St. Francis Hospital.

Lacking an explicit medical opinion about the necessity of Dr. Keefe's return to New York, each side draws opposite inferences from Dr. Keefe's transfer from the St. Louis hospital to the Olean hospital. According to Mrs. Keefe, the doctors must have decided that the St. Louis hospital was inappropriate: otherwise they would not have given up a paying patient. According to HHS, on the other hand, the doctors must have believed that both hospitals were appropriate to his needs: otherwise they would have transferred him to a nursing home rather than to another hospital. In our opinion, both inferences are speculative and inconclusive.

More to the point than these speculations is the Medicare Carriers Manual, which explicitly limits the availability of air ambulance services—as opposed to ambulance services in general—to instances where a patient needs *immediate acute-care services* at a hospital that is too far away for safe transportation by land. *See* Medicare Carriers Manual § 2120.4.C ("As a general guideline, when it would take a land ambulance 30–60 minutes or more to transport an *emergency* patient, consider air transportation appropriate.") (emphasis in original). The illustrative list of medical services in the Manual makes it clear that air ambulance services are justified only when the patient needs *emergency* services that are available solely at a distant destination. The list includes the following:

- Intracranial bleeding—requiring neurosurgical intervention;
- Cardiogenic shock;
- Burns requiring treatment in a Burn Center;
- Conditions requiring treatment in a Hyperbaric Oxygen Unit;
- Multiple severe injuries; or
- Life-threatening trauma.

Medicare Carriers Manual § 2120.4.B (1990). The Manual provisions also specifically state that a family's choice of hospital is not a justification for *air* ambulance services. *See* Medicare Carriers Manual § 2120.4.E ("*Air Ambulance Services....* Coverage is not available for transport from a hospital capable of treating the patient because the patient and/or his or her family prefers a specific hospital or physician.").

These provisions are valid interpretive rules, appropriately promulgated by the Secretary under the authority of 42 U.S.C. § 1395x(s)(7). *See Lyng v. Payne,* 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986) (stating that an "agency's construction of its own regulations is entitled to substantial deference"); *cf. St. Mary's Hosp. of Troy v. Blue Cross & Blue Shield Ass'n,* 788 F.2d 888, 890 (2d Cir.1986) (stating that Medicare Provider Reimbursement Manual is an "interpretive" document entitled to persuasive weight). They are neither irrational nor contradicted by other regulations. Given these provisions, we find that Mrs. Keefe has failed to establish that the Secretary lacked a basis for her determination that St. Louis University Hospital was an appropriate facility for Dr. Keefe.

**B. Was St. Francis Hospital "the beneficiary's home" under 42 C.F.R. § 410.40(e)(2)?**

█ Alternatively, Mrs. Keefe argues that her husband returned "home" when he flew back to Olean—either (a) because St. Francis Hospital was her husband's "home" in June 1988, since he was medically unfit to return to his personal residence in Olean or (b) because Olean in general was his home. In support of her first argument, Mrs. Keefe points out that after returning from St. Louis, Dr. Keefe never returned to his previous residence, but instead spent the rest of his life first in St. Francis Hospital and then in a nursing home.

The ALJ rejected this argument, finding that:

> A home, as noted in the regulations, was clearly meant to be the claimant's place of residence, and not a public institution, hospital, skilled nursing facility or any other treatment facility.... I thus can only conclude the term home in this case means personal residence....

The government maintains the same position on appeal: that there is a clear distinction between a hospital (or nursing home) and an individual's home. Section 410.40 itself refers to a beneficiary's "home" as distinct from a "hospital." 42 C.F.R. § 410.40 (1995). Similarly, the definitional section of the Medicare Act discussing home health services defines an "individual's home" as "a place of residence," and distinguishes that place from a hospital. 42 U.S.C. § 1395x(m). The government further points out that we cannot read "home" broadly to include all of Olean, since that broader concept—the vicinity around someone's house—is termed the "locality" in the regulations. 42 C.F.R. § 410.40(a) (1995).

Throughout the litigation of this case, the Secretary had stated that Medicare would have paid for Dr. Keefe's air ambulance services had he returned to his personal residence, rather than to a hospital in his hometown. After oral argument, however, counsel for the Secretary sent a letter reversing the government's position. Drawing the court's attention to § 2120.4.F of the Medicare Carriers Manual, which governs air ambulance services, the Secretary now states that "Medicare does not reimburse the cost of air ambulance services either to home or to a nursing facility," but rather only to the nearest available acute-care hospital, when such a facility is medically appropriate.[2] Section 2120.4.F reads as follows:

> Air ambulance services are not covered for transport to a facility that is not an acute care hospital, such as a nursing facility, physician's office or a beneficiary's home.

In light of this interpretive rule, which we are bound to follow unless it is irrational, *Iuteri v. Nardoza*, 732 F.2d 32, 37 (2d Cir. 1984), contradicted by other regulations, *see Securities Indus. Ass'n v. Board of Governors of the Federal Reserve Sys.*, 839 F.2d 47, 53 (2d Cir.), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 931 (1988), or *ultra vires, Federal Election Comm'n v. NRA Political Victory Fund*, —— U.S. ——, ——, 115 S.Ct. 537, 543, 130 L.Ed.2d 439 (1994) (according no deference to provisions outside "the province of the agency to interpret"), we conclude that Mrs. Keefe would lose even if St. Francis Hospital were to be considered Dr. Keefe's "home" at the time he was transferred there. He would not be entitled to reimbursement because the Carriers Manual makes clear that travel home *by air ambulance* is not covered. (We have already noted that if the hospital was not his home, he would also not be entitled to reimbursement because it was not the "nearest appropriate hospital.")

The air ambulance provisions of the Medicare Carriers Manual are not irrational, contradictory, or *ultra vires*. They are therefore dispositive of this case. The Secretary's distinction between air and land ambulance services is quite understandable, given the great cost difference between the two. *See St. Mary's Hosp.*, 788 F.2d at 890 ("Particularly in a program as complex and ripe with potential for abuse as Medicare, the Secretary has broad discretion to control excessive costs by adopting general prophylactic rules which, despite their inherent imprecision, eliminate the need for a cumbersome and expensive process of adjudicating item-by-item the reasonableness of costs.") (quoting *Friedman v. Heckler*, 765 F.2d 383, 387 (2d Cir.1985) (quoting *Marina Mercy Hosp. v. Harris*, 633 F.2d 1301, 1304 (9th Cir.1980))). Similarly rational is the decision to permit use of an *air ambulance* only when an emergency exists and when transfer to a distant acute-care facility, with special acute-care at-

---

**2.** Normally, we will not consider arguments raised for the first time in a reply brief, let alone after oral argument. *United States v. Gigante*, 39 F.3d 42, 50 n. 2 (2d Cir.1994). We are sorely tempted, in view of the Secretary's inexcusable delay in bringing the Medicare air ambulance rules to our attention, to disregard them. Never-

theless, because we can only determine whether the rules and regulations are rational when considered as a whole, we do examine the Medicare rules governing air ambulance services and disregard the Secretary's unfortunate failure to draw our attention to them earlier.

tributes, is needed. Because the special rules for air ambulance services are set forth publicly in § 2120.4.F of the Medicare Carriers Manual, and because they do not appear to conflict with the Medicare statute or regulations, no argument can be made that Dr. or Mrs. Keefe was misled by the Medicare rules. The Secretary seems to have met all the requirements of the statute and thus to have acted well within her authority in promulgating these interpretive rules. We must therefore defer to her interpretation of the statute and regulations that are in her charge. *See Shalala v. Guernsey Memorial Hosp.,* —— U.S. ——, ——, 115 S.Ct. 1232, 1236, 131 L.Ed.2d 106 (1995) (deferring to Secretary's interpretation of Medicare reimbursement regulations).

## CONCLUSION

The Medicare Carriers Manual explictly governs when air ambulance services are reimbursable under Medicare Part B, and does so in a manner that is not irrational. It clearly excludes Dr. Keefe's flight back from St. Louis to Olean by air ambulance. We therefore affirm the judgment of the district court.